No. 70,942
No. 71,045

STATE OF KANSAS, *Appellant,* v. DAVID JULIAN GREEN and JAMES
ARTHUR SMITH, *Appellees.*

(901 P.2d 1350)

Opinion filed April 21, 1995.

*Bryan M. Hastert,* assistant county attorney, argued the cause, and *Lawrence M. Wright,* county attorney, *Dan Dunbar,* deputy county attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellant.

*Wendell J. Barker,* of Ottawa, argued the cause and was on the brief for appellee David Julian Green.

*Robert L. Pinet,* of Ottawa, was on the brief for appellee James Arthur Smith.

The opinion of the court was delivered by

HOLMES, C.J.: This appeal by the State involves separate criminal actions filed against David Julian Green and James Arthur Smith arising out of an alleged armed robbery in Franklin County. The State appeals from a district court order dismissing the complaint and suppressing evidence in the case of David Green. This court has jurisdiction under K.S.A. 1994 Supp. 22-3602(b)(1) (appeal to Supreme Court from order dismissing a complaint). The State takes an interlocutory appeal, pursuant to K.S.A. 22-3603, from the district court's order suppressing evidence in the case of James Smith. Upon the State's motion, *State v. Smith* was transferred to the Supreme Court and consolidated with *State v. Green.*

The following background facts are not in dispute. On July 1, 1993, Ottawa police officers received a report that an armed robbery had just taken place at the Econo Lodge Motel in the City of Ottawa and an initial description of the getaway vehicle. Officers were directed to the Interstate 35 (I-35) area near the Econo Lodge. Officer Hawkins arrived at the motel within two minutes of receiving the report. The victims were two guests of the motel who were robbed at gunpoint in the parking lot while preparing to move their personal belongings into the motel room. Items taken from the victims included their purses and suitcases. The victims described the vehicle as a dark blue two-door, possibly a 1986 or 1987 Buick, with one black male in the back seat and two black males in the front. The victims observed the vehicle leave the scene of the robbery and proceed north on I-35. They also believed a red car might have been involved but did not know its direction of travel. Officer Hawkins immediately relayed the description of the suspects and their vehicles to the other officers.

After receiving the report from Officer Hawkins, Officers Lewis and Welsh proceeded out of the city limits and drove north on I-35 at a high rate of speed. Within seven minutes, they located a vehicle matching the description of the blue car. Prior to the officers initiating a stop, the vehicle pulled over to the side of the road and stopped. The officers stopped behind it and turned on their emergency lights for safety purposes. When one of the officers left the police car and attempted to make contact with the suspects, the vehicle sped away. The officers pursued the vehicle, and while doing so observed the occupants throwing property out the window, including, among other things, a large blue suitcase. The items thrown from the vehicle were later identified by the victims as their stolen property.

After the officers chased the vehicle approximately nine more miles, it stopped on the side of the road, and the three occupants, including Green and Smith, were arrested. The initial voluntary stop by the defendants occurred in Miami County and the subsequent stop and arrest, conducted by Ottawa police officers, took place in Johnson County. Approximately 28 minutes elapsed between the time of the initial report of the robbery and the ultimate stop and arrest of the defendants. The vehicle was actually a 1984 two-tone blue two-door Buick. The victims were unable to identify the defendants as the robbers.

The trial court found the stop and arrest were illegal and granted motions by both defendants to suppress evidence. The court found the officers were not in fresh pursuit because they did not locate the vehicle until it was out of their jurisdiction. The court suppressed all statements and evidence seized as a result of the arrest, including the items thrown from the vehicle during the pursuit. In addition, the trial court granted a motion to dismiss the complaint against Green, holding that the complaint was improperly verified. Additional facts will be set forth as necessary in resolving the issues on appeal.

The State on appeal asserts two issues: (1) whether the trial court erred in dismissing the complaint against Green for improper verification, and (2) whether the trial court erred in suppressing the evidence in both cases based upon its finding the

Ottawa police officers were not in fresh pursuit as defined by K.S.A. 1994 Supp. 22-2401a. Although Smith also filed a motion to suppress the complaint against him, the court found he had waived any objection to the complaint and denied the motion. Smith did not cross-appeal from that ruling, and the issue is not before us on appeal.

### Dismissal of the Green Complaint

On July 2, 1993, David Green was charged in a properly executed and verified complaint with aggravated robbery, aggravated assault, and obstructing legal process. On July 19, 1993, the State filed an amended complaint, eliminating the aggravated assault charge. The amended complaint stated in pertinent part:

"*Lawrence M. Wright, Franklin County Attorney,* of lawful age, being first duly sworn on oath, for complaint against the above shown defendant, alleges and states:
[listing of charges]

[signed by *Scott Ryburn*]
COMPLAINANT

"Subscribed and sworn to before me this 19th day of July 1993.

[signed by notary public]"

Later that same day, a preliminary hearing on the amended complaint was held before District Magistrate Judge Larry Coursen. At the hearing, the defendant argued the amended complaint was not properly verified because, while it states Lawrence M. Wright swore on oath, it was signed by Scott Ryburn. Scott Ryburn, the prosecutor, explained that he had not noticed the error. Ryburn requested that the court allow him to orally amend the complaint to replace "Lawrence M. Wright, Franklin County Attorney" with "Scott Ryburn, Assistant Franklin County Attorney."

Magistrate Coursen allowed the State to amend the complaint and bound the defendant over on count I, aggravated robbery. The magistrate found there was not sufficient evidence to bind the defendant over for trial on count II, obstruction of legal process. Arraignment was set for July 23, 1993.

On August 6, 1993, a motion to dismiss the amended complaint was filed along with a motion to suppress evidence. Rather than correct the amended complaint by interlineation or by filing a

journal entry reflecting the magistrate's decision, the State chose to file a second amended complaint on September 1, 1993.

On October 7, 1993, a hearing was held on Green's motion to dismiss the amended complaint as defective. In granting the defendant's motion, the district judge found that the amended complaint was "improperly verified" and that the magistrate should have dismissed the amended complaint at the preliminary hearing. The judge apparently ignored the fact that the magistrate granted the State's motion to amend the amended complaint and also ignored the subsequently filed second amended complaint which, in effect, memorialized the magistrate's ruling.

K.S.A. 1994 Supp. 22-2202(8) defines a criminal complaint as "a written statement under oath of the essential facts constituting a crime." K.S.A. 1994 Supp. 22-3201(e) provides: "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

In *State v. Rasch*, 243 Kan. 495, 501, 758 P.2d 214 (1988), we stated:

"When the defendant and his attorney are present and permission is obtained from the judge, the State may orally amend the complaint or information any time before the verdict or finding, if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced. . . . The amendment to the complaint or information may be shown by interlineation on the complaint or information, by the filing of an amended complaint or information, or by a journal entry stating the amendment to the complaint or information."

Although the defendant argues that the amended complaint was never verified or sworn to by anyone, there is no contention by the defendant that the notarial act on the amended complaint was invalid and no showing that it was not "subscribed and sworn to" by Scott Ryburn. K.S.A. 53-503(b) states: "In taking a verification upon oath or affirmation, the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the officer and making the verification is the person whose true signature is on the statement verified." Nor is there any showing that K.S.A. 53-502(c)

was not fully complied with at the time the amended complaint was "subscribed and sworn to" by Scott Ryburn. The notary public was not called to testify whether Ryburn actually swore to the amended complaint and Ryburn was not questioned on the matter.

The defendant also asserts on appeal, and the trial judge commented at the hearing, that the second amended complaint improperly included count II alleging the defendant committed the crime of "obstructing legal process." That charge had been dismissed by the magistrate at the preliminary hearing. As the defendant was not bound over on Count II, it constitutes mere surplusage and does not invalidate the complaint. In addition, there has been no showing that the alleged defects in the amended complaint resulted in any prejudice to the rights of the defendant.

As previously pointed out, the magistrate granted the State's motion to orally amend the amended complaint to correct the name of the person who subscribed and swore to that document. The magistrate had the authority to allow the amendment which, under our holding in *Rasch*, could be accomplished in several different ways.

We conclude, under the facts in this case, that upon the allowance of the State's motion to orally amend the first amended complaint, granted by District Magistrate Coursen, the amended complaint was validated, although the State should have utilized more diligence in perfecting the record. We further conclude the filing of the second amended complaint constituted a proper method of complying with the magistrate's decision, was consistent with our decision in *Rasch*, and should have been so recognized by the district judge.

The district judge erred in dismissing the aggravated robbery count against the defendant David Julian Green.

### Motion to Suppress Evidence (Green and Smith)

Defendants David Green and James Smith filed motions to suppress, alleging the stop and arrest were unlawful because the officers were acting outside their jurisdiction in violation of K.S.A. 1994 Supp. 22-2401a. They argued that all statements made by

the defendants following their arrest and all evidence seized from the defendants and their vehicle as a result of the arrest should be suppressed. Because the defendants' statements and all physical evidence in the case had to be suppressed, the defendants further argued the cases should be dismissed. A hearing on defendant Green's motion was held October 7, 1993. At a hearing on defendant Smith's motion on October 15, 1993, the parties stipulated that the evidence presented at the Green hearing would constitute the evidence at the Smith hearing. The district judge granted both motions to suppress, ostensibly for the reason that the officers must have observed, and begun pursuit of, the defendants within Ottawa. The State does not contend the arresting officers ever saw the defendants or their vehicle in Ottawa or that actual pursuit of the vehicle began within the city. The first stop of the defendants' automobile was made voluntarily by them in Miami County. The actual stop and arrest by the Ottawa officers took place in Johnson County.

The extraterritorial jurisdiction of municipal police officers is governed by K.S.A. 1994 Supp. 22-2401a(2), which provides:

"Law enforcement officers employed by any city may exercise their powers as law enforcement officers:

(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and

(b) *in any other place* when a request for assistance has been made by law enforcement officers from that place or *when in fresh pursuit of a person.*" (Emphasis added.)

"Fresh pursuit" is defined as "pursuit, without unnecessary delay, of a person who has committed a crime, or who is reasonably suspected of having committed a crime." K.S.A. 1994 Supp. 22-2401a(6)(c).

The interpretation of a statute is a question of law. This court's review of questions of law is unlimited. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

It is undisputed that no request for assistance was made by law enforcement officers from any jurisdiction outside Ottawa. Therefore, the only issue on this point is whether the Ottawa police officers were in "fresh pursuit" of the defendants as defined by

K.S.A. 1994 Supp. 22-2401a(2)(b) when they made the extraterritorial stop and arrest.

Kansas courts have not specifically addressed whether an officer must chase the fleeing suspect over the jurisdictional border to qualify as fresh pursuit. In the only cases we have found in which the Kansas fresh pursuit statute has been at issue, the officers followed the suspects from their jurisdiction across the jurisdictional border, and then the arrest was made. *State v. Hodges*, 252 Kan. 989, 851 P.2d 352 (1993); *City of Prairie Village v. Eddy*, 14 Kan. App. 2d 661, 798 P.2d 66 (1990).

*Hodges*, although factually distinguishable, is instructive. In *Hodges*, a Riley County police officer observed suspicious behavior in a business district of Manhattan which had been plagued by a number of recent burglaries. When the suspects left the business district, the officer followed them to a restaurant, where they stayed for approximately 30 minutes. The officer then followed the suspects out of town, and another Riley County officer eventually stopped them. Although the arresting officer activated his lights in Riley County, the stop was made in Geary County. The trial court suppressed the evidence after finding the Riley County officers acted beyond their power in stopping the vehicle in Geary County.

On appeal, this court held that, although the officer could have reasonably suspected that a crime had been committed when the vehicle was in the business district, the stop by the Riley County officers in Geary County was not justified because the officers were not in fresh pursuit. The court found the pursuit was "interrupted rather than continuous and protracted rather than without delay." 252 Kan. at 1001.

In *Eddy*, the defendant was arrested in Overland Park by a Prairie Village police officer and subsequently charged with driving while under the influence of alcohol. The arresting officer observed Eddy commit several traffic violations while in Prairie Village. The officer followed Eddy and stopped him in Overland Park. The Court of Appeals concluded this was fresh pursuit because "the officer's pursuit of the vehicle was continuous and without delay." 14 Kan. App. 2d at 663.

This court has held that under the Missouri uniform law on fresh pursuit, the arresting officer was not required to chase the suspects out of his jurisdiction when making an extraterritorial arrest. In *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972), the defendants fled the scene of an armed robbery in Kansas City, Kansas. A private citizen followed the defendants until they abandoned their vehicle in Kansas City, Missouri. Prior to undertaking the pursuit, the citizen had directed his wife to call the police, and, after the defendants abandoned their vehicle, he notified Kansas and Missouri police officers. After picking up another eyewitness at the scene of the robbery, the Kansas officers went to the place where the vehicle had been abandoned. Missouri officers had already checked the license tag and determined the vehicle had been rented by Charles Gratten. The Kansas officers staked out Gratten's house for 15 or 20 minutes and were then advised to go to the rental agency in Kansas City, Missouri, where the men who had rented the vehicle had been observed. After the eyewitness identified the defendants, the Kansas officers arrested them. Ninety minutes had elapsed between the time the defendants fled the scene and the time they were arrested. On appeal, the defendants argued the arrest in Missouri by the Kansas officers was unlawful.

In *Tillman*, the court recognized that both Kansas and Missouri had adopted the Uniform Law on Fresh Pursuit, and that the Kansas and Missouri statutes, although not identical, had "essentially similar provisions." 208 Kan. at 957. Under Missouri law, a Kansas police officer who entered Missouri in fresh pursuit of an escaping felon and continued the pursuit in that state had the same authority to arrest and hold the person in custody as a Missouri officer. The Missouri statute defined fresh pursuit as "pursuit without unreasonable delay" and further specified that "fresh pursuit . . . shall not necessarily imply instant pursuit." 208 Kan. at 957. In contrast, the Kansas statute, K.S.A. 22-2404(c) (which is identical to K.S.A. 1994 Supp. 22-2401a[6][c]), limited the definition to "pursuit without unnecessary delay."

The court had no hesitancy in concluding that the officers were in fresh pursuit within the meaning of the Missouri statute. Find-

ing the pursuit "continuous, uninterrupted and without unreasonable delay," the court held that the arrest was lawful. 208 Kan. at 958. Significantly, in *City of Junction City v. Riley*, 240 Kan. 614, 616, 731 P.2d 310, *cert. denied* 482 U.S. 917 (1987), the court stated *Tillman* held that the circumstances in that case showed fresh pursuit within the meaning of the uniform law on fresh pursuit adopted in both Missouri and Kansas.

As noted in *Tillman*, the Kansas and Missouri statutes are essentially similar. The Kansas statute requires only that the pursuit be without unnecessary delay; it does not require continuous observation of the fleeing suspects. Based on similar rationale to that applied in *Tillman*, *Hodges*, and *Eddy*, other courts interpreting the language "fresh pursuit" have upheld extraterritorial warrantless arrests where the fleeing suspects were not chased across the jurisdictional boundary.

In *Charnes v. Arnold*, 198 Colo. 362, 600 P.2d 64 (1979), the Colorado Supreme Court, interpreting language identical to the Kansas fresh pursuit statutes, upheld an extraterritorial warrantless arrest where the suspect was not followed across the jurisdictional boundary. In *Charnes*, a Lakewood police officer responded to a report of a hit and run accident and upon arriving at the scene, learned that the vehicle was registered to the defendant, who lived in Denver. The officer promptly drove to the defendant's Denver address, observed the defendant pulling into his driveway, and arrested him. The court concluded that although fresh pursuit obviously includes high-speed, Hollywood-style automobile chases, it also includes less dramatic police action. In determining if the officer was in fresh pursuit, the court recognized three factors: 1) whether the officer acted without unnecessary delay; 2) whether the pursuit was continuous and uninterrupted, although there need not be continuous surveillance of the suspect or uninterrupted knowledge of the suspect's whereabouts; and 3) the relationship in time of the commission of the offense, the commencement of the pursuit and the apprehension of the suspect. Because the police responded immediately to the call and promptly pursued the only lead available, the court held that the officer was in fresh pursuit. 198 Colo. at 364-65.

In *Duenez v. State,* 735 S.W.2d 563 (Tex. App. 1987), a city police officer received a report of a car burglary and a description of the suspects and their direction of travel. The officer proceeded out of the city limits and, within three to five minutes of receiving the call, located a vehicle matching the description. The officer stopped the vehicle and arrested the defendant. Under Texas law, extraterritorial arrests were authorized if the officer was in "hot pursuit." The court upheld the arrest, even though the arresting officer never saw the suspects within his jurisdiction, because the pursuit was continuous, uninterrupted, and without unreasonable delay.

In *Com. v. Magwood,* 503 Pa. 169, 469 A.2d 115 (1983), city police officers received a report of an attempted robbery. An officer sought the suspect after receiving his description and direction of flight. The officer located and arrested the suspect outside the officer's jurisdictional boundary. The court held that the Pennsylvania statute, which authorized extraterritorial arrests when the officer "continues in pursuit," contemplated "fresh pursuit." The court found the police continuously pursued the defendant from the time of the initial report and upheld the arrest after concluding the pursuit was fresh, continuous, and uninterrupted. 503 Pa. at 175-76. See also *Com. v. Stasiak,* 305 Pa. Super. 257, 451 A.2d 520 (1982) (extraterritorial arrest upheld because pursuit was fresh, continuous, and uninterrupted).

Other jurisdictions reaching similar results include *People v. Clark,* 46 Ill. App. 3d 240, 360 N.E.2d 1160, *lv. to appeal denied* 66 Ill. 2d 632 (1977); *Jimenez v. State,* 750 S.W.2d 798 (Tex. App. 1988) (applying Texas and New Mexico law); *Six Feathers v. State,* 611 P.2d 857 (Wyo. 1980).

None of the cases we have found require that an actual insight chase begin within the officer's territorial jurisdiction. Our statutes require only that the pursuit be "without unnecessary delay, of a person who has committed a crime, or who is reasonably suspected of having committed a crime." K.S.A. 1994 Supp. 22-2401a(6)(c). As stated in *Charnes,* 198 Colo. at 365, among the factors to be considered in determining whether an officer is in fresh pursuit are: (1) whether the officer acted without

unnecessary delay; (2) whether the pursuit was continuous and uninterrupted, although there need not be continuous surveillance of the suspect or uninterrupted knowledge of the suspect's whereabouts; and (3) the relationship in time of the commission of the crime, the commencement of the pursuit, and the apprehension of the suspect. Additionally, actual visual pursuit of the person sought need not begin within the officer's territorial jurisdiction.

Here, the criminal activity that prompted the pursuit originated in Ottawa. Although the Ottawa officers did not chase the defendants over the jurisdictional boundary, the pursuit was continuous, uninterrupted, and without delay. The officers immediately began pursuing the defendants upon receiving a report of the robbery and a description of the suspects and their direction of flight. The officers located the vehicle within seven minutes and chased it until it stopped. The officers continuously pursued the vehicle during the entire 28-minute period between the initial report of the crime and the ultimate stop and arrest of the defendants. There was no break in the officers' efforts to apprehend the defendants or the defendants' efforts to escape. The trial court erred in finding the officers were not in fresh pursuit under K.S.A. 1994 Supp. 22-2401a(2)(b). The extraterritorial stop and arrest were lawful. The trial court erred in granting the motions to suppress evidence.

We have carefully considered other arguments of the defendants on both the issues before the court and find them to be without merit. In view of the result reached, we need not address other arguments of the State in support of its position.

In conclusion, we reverse the trial court's orders suppressing the physical evidence and the defendants' statements in the cases of both Green and Smith. We also reverse the trial court's order dismissing the complaint against defendant Green. We remand the case of *State v. Green* with directions to reinstate the complaint as to the one count of aggravated robbery. Both *State v. Smith* and *State v. Green* are remanded for further proceedings as to each defendant.

Reversed and remanded with directions.