No. 73,030

PEMCO, INC., *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant.*
(907 P.2d 863)

Opinion filed December 8, 1995.

*James Bartle*, of Kansas Department of Revenue, argued the cause and was on the briefs for appellant.

*Alan F. Alderson*, of Alderson, Alderson & Montgomery, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, C.J.: This is an appeal by the Kansas Department of Revenue (Department) from the decision of the district court invalidating K.A.R. 92-19-72 on the ground that it exceeded the statutory authority contained in K.S.A. 1994 Supp. 79-3602(a). The action arises from the Department's assessment of sales tax against Pemco, Inc.'s, rental of equipment to its wholly owned subsidiary, Clean Water Construction (Clean Water).

The pertinent stipulated facts may be summarized as follows. Pemco is a corporation authorized to do business in Kansas, and only two persons own stock therein. Pemco is the parent of three

wholly owned subsidiary corporations: Carrothers, Clean Water, and Triangle Building. Clean Water and Triangle Building operate as building contractors. Pemco owns all of the construction equipment used by both building contractors, which it rents to each.

Triangle Building is an "open shop" which operates mainly in Kansas, a "right to work" state. Clean Water is a union shop which operates mainly in Missouri, where union contracts are generally required. This arrangement allows the two subsidiaries to maintain what is known as a "double-breasted operation," with both an open and a union shop. All three corporations share a single business location, although each pays its own employees. There is a management fee arrangement between the parent and each of the subsidiaries under which no money actually changes hands. An in-house equipment rate has been established which is billed to the renting subsidiary on a monthly basis. The parent company and its subsidiaries file combined income tax returns in Kansas and consolidated federal income tax returns.

This appeal involves a single, narrow question of law—whether K.A.R. 92-19-72 exceeds the statutory authority of K.S.A. 1994 Supp. 79-3602(a).

K.S.A. 1994 Supp. 79-3602(a) is the first section of the definitional statute of the Kansas Retailers' Sales Tax Act (K.S.A. 79-3601 *et seq.*) and provides:

" 'Persons' means any individual, firm, copartnership, joint adventure, association, corporation, estate or trust, receiver or trustee, or any group or combination acting as a unit, and the plural as well as the singular number; and shall specifically mean any city or other political subdivision of the state of Kansas engaging in a business or providing a service specifically taxable under the provisions of this act."

K.A.R. 92-19-72, a Department of Revenue regulation, provides:

"**Retail sales between related entities**. (a) Each interdepartmental transfer of tangible personal property and taxable services between various departments of a single legal entity shall not constitute a sale subject to sales tax.

"(b) Each transfer of tangible personal property and taxable services between separate legal entities for use or consumption, and not for resale, shall be taxable, even though the entities:

(1) Share common principals or ownership and operations;

(2) share the same business location;

(3) file consolidated income tax returns for federal and state income purposes; or

(4) do not enjoy a profit or expense as a result of the transaction.

"When a transaction would be subject to sales tax if the transaction were between two separately owned and operated entities, the commonality of the two entities is irrelevant, and sales tax is imposed on the transaction between the two related entities.

"(c) 'Separate legal entities' shall mean entities which are recognized as individual entities either in fact or at law. Each transfer of tangible personal property and taxable services between separate legal entities for use or consumption, and not for resale, shall include:

(1) Transfers between individuals and partnerships;

(2) transfers between individuals and corporations;

(3) transfers between individuals and unincorporated associations;

(4) transfers between partnerships and corporations;

(5) transfers between partnerships and unincorporated associations;

(6) transfers between partnerships;

(7) transfers between unincorporated associations and corporations; and

(8) transfers between corporations, whether between sister corporations or parent and subsidiary corporations."

K.A.R. 92-19-72 became effective May 1, 1988.

Pemco's position may be summarized as follows: (1) Pemco and Clean Water are two corporations acting as a unit; (2) two corporations acting as a unit are within the statute's phrase "any group or combination acting as a unit"; and (3) the regulation clearly requires the two corporations to be treated as separate entities for sales tax purposes and thereby exceeds the statute. The district court essentially agreed with Pemco's interpretation.

The Department argues that the regulation is not in conflict with nor does it exceed the statute. A corporation is recognized as a person for sales tax purposes by the statute and is a separate legal entity. The fact that such corporation may be closely affiliated with another corporation does not change its separate person or entity status to that of being part of a group acting as a unit. Therefore, the regulation spelling out that separate legal entities are each separate persons subject to sales tax is not inconsistent with nor does it exceed the statute.

The interpretation of a statute is a question of law. An appellate court's review of questions of law is unlimited. *Davis v. City of*

*Leawood*, 257 Kan. 512, Syl. ¶ 3, 893 P.2d 233 (1995); *State v. Green*, 257 Kan. 444, Syl. ¶ 4, 901 P.2d 1350 (1995); see *Seabourn v. Coronado Area Council, B.S.A.*, 257 Kan. 178, Syl. ¶ 1, 891 P.2d 385 (1995).

Administrative regulations have the force and effect of law. K.S.A. 77-425; *Jones v. The Grain Club*, 227 Kan. 148, 150, 605 P.2d 142 (1980). Administrative regulations, moreover, are presumed to be valid, and one who attacks them has the burden of showing their invalidity. *Capital Electric Line Builders, Inc. v. Lennen*, 232 Kan. 379, 383, 654 P.2d 464 (1982). Rules or regulations of an administrative agency, to be valid, must be within the statutory authority conferred upon the agency. Those rules or regulations that go beyond the authority authorized, which violate the statute, or are inconsistent with the statutory powers of the agency have been found void. Administrative rules and regulations, to be valid, must be appropriate, reasonable, and not inconsistent with the law. *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, Syl. ¶ 1, 673 P.2d 1126 (1983).

This is an issue of first impression in Kansas, although similar statutes in other states have given rise to considerable litigation as to whether affiliated corporations could avoid sales tax on transactions with each other. Illustrative thereof are *Ex parte Capital City Asphalt, Inc.*, 437 So. 2d 1291 (Ala. 1983); *Rexall Drug Co. v. Peterson*, 113 Cal. App. 2d 528, 248 P.2d 433 (1952); *Montgomery Ward & Co. v. State, Dept. of Revenue*, 628 P.2d 85 (Colo. 1981); *Superior Coal Co. v. Dept. of Finance*, 377 Ill. 282, 36 N.E.2d 354 (1941); *Bonnar-Vawter v. Johnson*, 157 Me. 380, 173 A.2d 141 (1961); *Commissioner of Revenue v. Globe Automatic Vending Co.*, 383 Mass. 886, 421 N.E.2d 1213 (1981); *Central Cooling v. Dir. of Rev., State of Mo.*, 648 S.W.2d 546 (Mo. 1982); *Motor Corp. v. Kosydar*, 50 Ohio St. 2d 290, 364 N.E.2d 252 (1977); *Shelburne Sportswear v. Phila.*, 422 Pa. 199, 220 A.2d 798 (1966); *Automobile Club v. Department of Revenue*, 27 Wash. App. 781, 621 P.2d 760 (1980); and *Southern States Cooperative v. Dailey*, 167 W. Va. 920, 280 S.E.2d 821 (1981). See Annot., 64 A.L.R. 2d 769, and cases cited therein. Although the various statutes involved in these cases vary and the rationale differs, the com-

mon result has been to permit the imposition of sales taxes or their equivalent on transactions between affiliated corporations. See Comment, *The Application of Kansas Sales Tax to Transactions Between Affiliated Companies*, 42 Kan. L. Rev. 461 (1994), for a careful analysis of the subject.

The legislature could specifically exempt transactions between affiliated companies as have the legislatures of Connecticut and Texas, but it has not done so. See *American Totalisator Co. v. Dubno*, 210 Conn. 413, 422 n.12, 555 A.2d 421 (1989); Conn. Gen. Stat. § 12-412(62) (1995); Tex. Tax Code Ann. § 151.346(a) (West 1992).

For convenience, we iterate the statute at this point as follows:

"(a) 'Persons' means any individual, firm, copartnership, joint adventure, association, corporation, estate or trust, receiver or trustee, or any group or combination acting as a unit, and the plural as well as the singular number; and shall specifically mean any city or other political subdivision of the state of Kansas engaging in a business or providing a service specifically taxable under the provisions of this act."

Note that the statute is simply defining what a person is for purposes of the Act. It first lists the usual types of entities recognized at law and then adds "or any group or combination acting as a unit." There is nothing to indicate an intent that this catch-all phrase was intended to alter the status of any of the specifically listed entities. A logical interpretation is that it was intended to extend "person" status to groups or combinations acting as a unit even though the group or unit does not fit within the legal definition of any of the specifically designated entities. Thus, an improperly incorporated putative corporation could not escape sales tax liability by relying on its legal infirmities. Also, tax liability could not be avoided by claiming a weird type of group or unit not fitting into a standard type of organization.

A common theme in a number of decisions from other jurisdictions involving this issue is that a corporation, having chosen the legal form in which to exist and do business, should not be permitted to pierce its own corporate veil to gain a tax advantage. Illustrative is *Southern States Cooperative v. Dailey*, 167 W. Va. at 930-31, wherein the court stated:

"Moreover, Southern States and its cooperatives have made a conscious decision to do business in the corporate form with its attendant advantages. These advantages include the limitation of personal liability, the continuity of corporate existence, and the facilitation of business administration. [Citation omitted.] Having taken advantage of the benefits of incorporation, a corporation cannot decline to accept the liabilities of the corporate form in order to reduce the incidence of taxation. *Conway v. Jobin*, 115 N.H. 496, 345 A.2d 903 (1975); *Shelby County v. Barden*, 527 S.W.2d 124 (Tenn. 1975); *Noble v. C.I.R.*, 368 F.2d 439 (9th Cir. 1966). As was said in *Schenley Distillers Corp v. United States*, 326 U.S. 432, 66 S. Ct. 247, 90 L. Ed. 181 (1945):

> 'While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person.' 326 U.S. at 437, 66 S. Ct. at 249, 90 L. Ed. at 184.

"Southern States has had the benefits of the corporate form and should not be allowed to disavow it to reduce the incidence of taxation. *Shelburne Sportswear Inc. v. City of Philadelphia*, 220 A.2d 798, 422 Pa. 199 (1966); *Bonnar-Vawter Inc. v. Johnson*, 157 Me. 380, 173 A.2d 141 (1961). The burden of taxation does not create a burden disproportionate to the benefits of incorporation and courts generally have been reluctant to disregard separate legal entities for the purpose of granting relief from taxation in such circumstances. *See, e.g., Moline Products Inc. v. Commissioner of Internal Revenue*, 319 U.S. 436, 63 S. Ct. 1132, 87 L. Ed. 1499 (1943). Consequently we hold that Southern States and its affiliated cooperatives are each 'persons' as defined by W. Va. Code § 11-13-1, and as such the gross receipts from transfers between them are subject to the West Virginia business and occupation tax."

In the same vein, our sister state of Missouri reasoned in *Central Cooling v. Dir. of Rev., State of Mo.*, 648 S.W.2d at 547, as follows:

"Central asks this Court to 'pierce its corporate veil' and find that any transactions between it and Johnson are no more than interdepartmental transfers. In support, Central cites cases where the court disregarded a subsidiary's separate status and treated it and the parent as a single entity. *Acme Precision Products, Inc. v. American Alloys Corporation*, 422 F.2d 1395 (8th Cir. 1970); *Osler v. Joplin Life Insurance Co.*, 164 S.W.2d 295 (Mo. 1942). In those cases the court ignored separate corporate entities in order to prevent a fraud, wrong or injustice, and 'pierced the corporate veil' to impose liability on the corporation, not to bestow an advantage; they are not persuasive on the issue in this case.

"Persuasive are those cases where the court examined the notion of piercing the corporate veil in taxation contexts. The United States Supreme Court held in

*Moline [Properties], Inc. v. Commissioner of Internal Revenue*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943):

> 'The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.'

*Id.* at 438-439, 63 S.Ct. at 1133-1134."

Kansas has substantial case law authorizing the piercing of a corporate veil if to do otherwise would work an injustice on third parties.

In *Doughty v. CSX Transportation, Inc.*, 258 Kan. 493, 905 P.2d 106 (1995), we stated:

"The ultimate test for imposing alter ego status is whether, from all of the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties. In addition to the factors used to determine a corporate alter ego status, a plaintiff must show that allowing the legal fiction of a separate corporate structure would result in injustice toward the plaintiff. *Dean Operations [, Inc. v. One Seventy Assocs.,]* 257 Kan. 676, Syl. ¶¶ 5, 6 [, 896 P.2d 1012 (1995)]." p. 500.

"The *Dean* court noted that the fiction of separate corporate identities of two corporations will not be extended to permit one of the corporations to evade its just obligations; to promote fraud, illegality, or injustice; or to defend crime." p. 497.

There is no injured third party involved herein who needs to pierce a corporate veil if injustice is to be avoided. The concept of piercing the veil is to permit an injured party to get past the corporate shield in certain circumstances. Pemco is, in essence, seeking to pierce its own corporate veil to avoid the payment of sales tax—the very veil it established. Pemco apparently believed that it was to its advantage to engage in the construction business through two wholly owned subsidiary corporations rather than through, for example, divisions of itself. It gained, *inter alia*, the advantage of being a double-breasted operation—able to enter into union and

nonunion construction contracts in Kansas or Missouri as the opportunity might arise. We find no reason why it should be able to deny the corporate structure it has chosen in order to gain a tax advantage. There is nothing in the statute defining persons which authorizes a corporation to deny its legal status in a transaction between it and an affiliated corporation and claim to be a group or combination acting as a unit.

We conclude that K.A.R. 92-19-72 is not inconsistent with, nor does it exceed, the statutory definition contained in K.S.A. 1994 Supp. 79-3602(a) in the claimed particulars.

The judgment of the district court is reversed.

ABBOTT, J., dissenting: I base my dissent on the issue of legislative intent in adopting K.S.A. 1994 Supp. 79-3602.

As I understand the way the Kansas Department of Revenue (KDR) interprets the statute, if a single corporation purchases vehicles (for example) and plans to lease the vehicles out, the corporation pays no sales tax on the purchase but collects sales tax on each lease agreement. Here, Pemco apparently paid sales tax on the equipment when it was purchased. That fact is not an issue in this case and has no bearing on the dissent.

What is important is the language found in 79-3602(a) defining "persons" as meaning "any . . . corporation . . . or any group or combination acting as a unit."

In commenting on that language, the trial judge said:

"Since the statute does not say 'other' group or combination and simply says 'any group or combination,' this Court finds that the words of the statute do not preclude two corporations from acting as a unit for the purposes of this sales tax statute. Therefore, because the regulation at issue, K.A.R. 92-19-72, taxes two legally separate corporations, regardless of whether they act as a unit or as an affiliated business, the regulation exceeds its statutory authority and is therefore invalid."

K.S.A. 1994 Supp. 79-3602, which has remained virtually unchanged since 1937, does not refer to any *other* group, as other statutes do. Nor has the Kansas Legislature specifically addressed the corporate relationships at issue herein. The trial court found that the legislative history gave no indication that the legislature

had even considered related-company transactions. This position is echoed in a thoughtful, recently published analysis of the subject. See Comment, *The Application of Kansas Sales Tax to Transactions Between Affiliated Companies*, 42 Kan. L. Rev. 461, 469 (1994).

The trial court found that the meaning of the phrase "any group or combination acting as a unit" is ambiguous. KDR acknowledges "that inclusion of the word 'other' in K.S.A. 79-3602(a) might make the statute less ambiguous and that, in retrospect, more precise language and phrasing could have been used." While I am mindful of the great weight to be accorded to KDR's interpretation of 79-3602(a), through K.A.R. 92-19-72, see *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 720, 792 P.2d 971 (1990), I am nevertheless persuaded that the Kansas Legislature understood the meaning of the words it used and used the words in their common and ordinary meaning. See *Bank of Kansas v. Davison*, 253 Kan. 780, 788, 861 P.2d 806 (1993).

If the legislature intended that the phrase in question was meant to merely embrace unincorporated corporations, as KDR asserts, it could have easily made such a distinction. It did not. Instead, by writing the phrase in a broad sweep, and by failing to address elsewhere within the Act's penumbra the status of related or affiliated companies or corporations, I would conclude that the phrase in question includes a corporation and its wholly owned subsidiary. I would affirm the trial court.

DAVIS, J., joins the foregoing dissenting opinion.