678 S.E.2d 255

SOUTH CAROLINA DEPARTMENT OF REVENUE, Appellant,

v.

ANONYMOUS COMPANY A and Anonymous
Company B, Respondents.

No. 26661.

Supreme Court of South Carolina.

June 1, 2009.

514

Managing Counsel for Litigation Milton G. Kimpson, Counsel for Litigation Craig M. Pisarik, Director Ray N. Stevens, Chief of Staff Harry T. Cooper, Jr., and General Counsel for Litigation Nicholas P. Sipe, all of Columbia, for Appellant.

John D. Hawkins, of The Hawkins Law Firm, of Spartanburg, for Respondents.

Justice PLEICONES:

Companies A and B (Respondents) are two separate corporations with the same owners. Company A (Dealer) sells used cars and then sells the retail installment sales contracts to Company B (Finance Company). S.C.Code Ann. § 12–36–90(2)(h), allows a taxpayer to take a sales tax credit for those installment contracts on which the purchaser fails to make payments and which are consequently charged off as bad debts or uncollectible accounts. Pursuant to the statute, Respondents seek a refund of sales taxes for installment contracts which became uncollectible after Dealer sold them to Finance Company.

Respondents contested the South Carolina Department of Revenue's (SCDOR) ruling that they are ineligible for relief under the statute. The Administrative Law Court (ALC) ruled for Respondents and the circuit court affirmed. As more fully explained below, to qualify under the statute, Dealer and Finance Company must constitute one "person" and one "taxpayer" within the definitions set forth in Title 12, Chapter 36 of the South Carolina Code, also known as the Sales and Use Tax Act. Whether or not the parties together meet these definitions is the critical question in the instant case. We find that the parties are not one "person" under the terms of S.C.Code Ann. § 12–36–30 and so, reverse the decision of the circuit court.

## FACTS

Timothy Brown (Husband) and his wife Noreen (Wife) are the sole shareholders of Dealer and Finance Company, which are sub-chapter S corporations doing business in South Carolina. Husband testified that the main purpose for Finance Company's existence is to take advantage of tax benefits. By selling its contracts to Finance Company, Dealer is able to avoid recognizing as income the full amount of the contract

and can instead recognize only the discounted amount it receives from Finance Company.[1]

The sales tax on the purchase of each vehicle sold is included in the installment loan contract purchased by Finance Company. Only Dealer has a retail license and therefore, must pay sales tax to DOR. Dealer, along with Finance Company, submitted a Claim for Refund to DOR. The claimed amount covered 1,731 loans and totaled $330,274.

## STANDARD OF REVIEW

"The construction of a statute by an agency charged with its administration is entitled to the most respectful consideration and should not be overruled absent compelling reasons." *Sloan v. S.C. Bd. of Physical Therapy Examiners*, 370 S.C. 452, 636 S.E.2d 598 (2006). The circuit court's scope of review is set forth in S.C.Code Ann. § 1–23–610(C) (2008). On appeal, this Court's scope of review is the same as that of the circuit court. *See Brown v. S.C. Dep't of Health and Environmental Control*, 348 S.C. 507, 560 S.E.2d 410 (2002).

## ISSUE

Did the circuit court err in finding that Dealer and Finance Company are entitled to sales tax relief under S.C.Code Ann. § 12–36–90(2)(h), also known as the "bad debt statute?"

## DISCUSSION

S.C.Code Ann. § 12–36–90(2)(h) allows for a tax credit for sales tax paid on installment contracts that become worthless or uncollectible and are charged off as bad debt.[2] It provides in part:

---

1. Dealer sells its contracts to Finance Company for an amount determined by the historical default rate of its customers. The Internal Revenue Service allows Dealer to report this discounted rate as income rather than the full amount of the contract.

2. Black's Law Dictionary defines "charge-off" in part as follows: "To treat (an account receivable) as a loss or expense because payment is unlikely; to treat as bad debt." Black's Law Dictionary 227 (7th ed.1999).

A taxpayer who pays the tax on the unpaid balance of an account which has been found to be worthless and is actually charged off for state income tax purposes may take a deduction for the sales price charged off as a bad debt or uncollectible account on a return filed pursuant to this chapter, except that if an amount charged off is later paid in whole or in part to the taxpayer, the amount paid must be included in the first return filed after the collection and tax paid. The deduction allowed by this provision must be taken within one year of the month the amount was determined to be a bad debt or uncollectible account.

S.C.Code Ann. § 12–36–90(2)(h) (2008).[3]

The Code defines "taxpayer" as "any person liable for taxes under this chapter." S.C.Code Ann. § 12–36–40 (2008). The Code further defines "person" as:

any individual, firm, partnership, limited liability company, association, corporation, receiver, trustee, any group or combination acting as a unit, the State, any state agency, any instrumentality, authority, political subdivision, or municipality.

S.C.Code Ann. § 12–36–30 (2008).

Though the statute does not explicitly say so, the logical reading of § 12–36–90(2)(h) is that the same taxpayer who paid the sales tax must be the taxpayer who charged the debt off for income tax purposes. To hold otherwise would be to render the second part of the bad debt statute meaningless. By providing that the taxpayer must include the amount in a return if the amount charged off is later repaid, it is apparent that the statute is meant to benefit only retailers who suffered financially from a customer's non-payment.

Since Dealer paid the sales tax and Finance Company charged off the bad debt, Dealer and Finance Company must together meet the definition of "person" and "taxpayer" in order to meet the terms of the deduction statute.

---

**3.** Section 12–39–90(2)(h) provides relief to a taxpayer in the form of a tax deduction on a future tax return. However, the ALC held, and the circuit court agreed, that the Dealer may demand a refund of the bad debt credit. DOR notes that its argument in this regard was rejected by the circuit court. It has not pursued this point on appeal.

Respondents contend, and the circuit court and ALC agreed, that Dealer and Finance Company together constitute a "person" under § 12–36–30. Therefore, in the view of the circuit court, they are together a "taxpayer" as one person liable for sales tax and "Dealer, as a member of this unit, may take a deduction on its sales returns for debts that are actually charged off by Finance Company, the second member of the taxpayer unit." Because we find that the two corporations do not constitute one person within the meaning of § 12–36–30, we do not reach Respondents' status as a "taxpayer."

## A. The Circuit Court erred in finding that Dealer and Finance Company together constitute one "person"

As noted above, § 12–36–30 defines a "person" as follows: any individual, firm, partnership, limited liability company, association, corporation, receiver, trustee, any group or combination acting as a unit, the State, any state agency, any instrumentality, authority, political subdivision, or municipality.

S.C.Code Ann. § 12–36–30 (2008).

The phrase "any group or combination acting as a unit" has not been interpreted by South Carolina courts. Respondents argue that they constitute a "unit" because they are owned by the same individuals and "Finance Company's sole reason for existence is to purchase Dealer's installment sales contracts." The circuit court agreed with Respondents. It found it significant that the previous version of the statute read "or any other group or combination" and the word "other" was not included in the current version. The circuit court noted that "[h]ad the legislature wanted to limit 'any group or combination acting as a unit' to only non-incorporated entities, as suggested by the Department, it could have kept the word 'other' in the statute, as in the former version. . . ."

DOR contends that the "unit" clause is a catch-all clause and, regardless of the presence or absence of the word "other," two corporations may not constitute one person under the statute. We agree with DOR.

The Supreme Court of Kansas considered a similar statute in *Pemco, Inc. v. Kansas Department of Revenue*, 258 Kan. 717, 907 P.2d 863 (1995). Pemco leased construction equip-

ment to its wholly-owned subsidiaries and argued that it did not owe sales tax for the leases. The company argued that it and one of its subsidiaries constituted a "unit" under the definition of "person," which provides:

"Persons" means any individual, firm, copartnership, joint adventure, association, corporation, estate or trust, receiver or trustee, or any group or combination acting as a unit. . . .

Kan. Stat. Ann. § 79–3602(a) (1994 Supp.). The Supreme Court of Kansas held that the parent company and subsidiary could not constitute a single "person" under the statute:

Note that the statute is simply defining what a person is for purposes of the Act. It first lists the usual types of entities recognized at law and then adds, "or any group or combination acting as a unit." There is nothing to indicate an intent that this catch-all phrase was intended to alter the status of any of the specifically listed entities. A logical interpretation is that it was intended to extend "person" status to groups or combinations acting as a unit even though the group or unit does not fit within the legal definition of any of the specifically designated entities. Thus, an improperly incorporated corporation could not escape sales tax liability by relying on its legal infirmities. Also, tax liability could not be avoided by claiming a weird type of group or unit not fitting into a standard type of organization.

*Pemco*, 907 P.2d at 866.

We agree with the reasoning of the court in *Pemco* in that "[t]here is nothing to indicate an intent that this catch-all phrase was intended to alter the status of any of the specifically listed entities." *Id.* Dealer and Finance Company are each "persons" within the meaning of § 12–36–30 since each is a corporation. To allow the two corporations to present themselves as one "person" by combining to form a unit would be to rewrite the statute.

Respondents argue that policy arguments weigh in their favor since, by avoiding application of the § 12–36–90(2)(h), "the government keeps money it was never owed." We note that whether or not sales tax is owed depends on the sale of an item rather than the fulfillment of the installment contract. *See* S.C.Code Ann. § 12–36–910 (2008). Thus, Respondents' argument is flawed since the Government was owed the

money at the time of sale. By enacting the "bad debt statute," the General Assembly created a method by which a taxpayer may recoup sales tax paid on installment contracts that ultimately prove uncollectible. Respondents could have availed themselves of this method if not for their election to obtain income tax savings pursuant to IRS regulations.[4]

Because we find that Dealer and Finance Company are bound by their chosen forms, we reverse the decision of the circuit court.

## B. Finance Company is not entitled to relief under the doctrine of assignment

Respondents posit as an additional sustaining ground that Finance Company is entitled to recoup sales tax based on the doctrine of assignment. We disagree.

■ DOR contends that Respondents did not appeal from adverse rulings by the ALC and circuit court on this issue and so, the rulings are the law of the case. We note, however, that the successful party in the lower court may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling. *See I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000).

■■ Exercising our discretion under *I'On* and considering the merits of the additional sustaining ground, we find that the lower courts correctly held that Finance Company is barred from the refund by § 12–60–470(C). "A refund of taxes is solely a matter of governmental or legislative grace and any person seeking such relief must bring himself clearly within the terms of the statute authorizing the same." *Guaranty Bank & Trust Co. v. S.C. Tax Comm'n,* 254 S.C. 82, 90, 173 S.E.2d 367, 370 (1970). Section 12–60–470(C)(2) provides that a taxpayer legally liable for the tax may assign a refund

---

4. In pursuing a tax deduction under the "bad debt statute," Dealer seeks to benefit twice from defaults on the installment contracts. Dealer testified that he paid lower income taxes by selling the contracts to Finance Company for an amount less than face value based on the assumption that a certain number of the installment contracts would fail. *See supra* note 1 and accompanying text. Now that a number of the installment contracts have failed, as predicted, Dealer seeks an additional benefit through the sales tax deduction provided by the "bad debt statute."

to another person "only after the taxpayer's claim is allowed, the amount of the refund is finally decided, and the department has approved the refund." S.C.Code Ann. § 12–60–470(C)(2) (2008). In the instant case, if an assignment occurred, it took place well before the event giving rise to a claim for relief under the bad debt statute. In fact, according to Husband, the only assignment cited by Respondents occurs almost immediately after the customer signs the installment agreement. Consequently, any assignment to Finance Company cannot meet the requirements of § 12–60–470(C)(2) and therefore, Finance Company is not entitled to a refund on this basis.

## C. Dealer is not entitled to the tax credit on its own

Finally, Respondents offer as an additional sustaining ground the theory that Dealer may be entitled to the tax credit on its own based on the idea that it has "bad debt" "because it sells its contracts to Finance Company for an amount determined by the historical default rate of its customers." The lower court declined to reach this argument and we find it without merit. According to the "Agreement to Purchase Automobile Contracts" between the two companies, Dealer assigns all right, title, and interest to Finance Company. Dealer therefore, having sold the contract, has no bad debt.

## CONCLUSION

We hold that the circuit court erred in finding that Dealer and Finance Company together constitute a "person" under § 12–36–30. The decision of the circuit court is therefore

**REVERSED.**

WALLER, Acting Chief Justice, BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.