NOT DESIGNATED FOR PUBLICATION

No. 117,606

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GARRET ROME,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Russell District Court; RON SVATY, judge. Opinion filed June 15, 2018. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before STANDRIDGE, P.J., GREEN and MCANANY, JJ.

PER CURIAM: Garret Rome appeals from the trial court's decision affirming his driver's license suspension by the Kansas Department of Revenue (KDOR) for driving under the influence (DUI). On appeal, Rome argues that this court should reverse his driver's license suspension because the following cases support that the Kansas implied consent law, K.S.A. 8-1001 et seq., is unconstitutional: *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed 560 (2016); *State v. Nece*, 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*); *State v. Ryce*, 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*); *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016) (*Nece I*); and *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*). Nevertheless, because the holdings from the preceding criminal

1

cases have no bearing on Rome's administrative driver's license suspension case, we affirm.

In the early morning hours of April 18, 2015, Officer Travis Peck pulled over a car because the driver was driving without using headlights. Once Officer Peck began the traffic stop, he immediately suspected that the driver, who he later learned to be Rome, was DUI. In addition to driving without his headlights, Officer Peck believed that Rome was DUI because he had slurred speech, had glassy and bloodshot eyes, had an odor of alcohol coming from his person, and had admitted to consuming "a few beers" before driving. Rome performed and failed both the walk-and-turn and one-leg-stand tests.

Officer Peck requested that Rome submit to a preliminary breath test (PBT). Rome submitted to the PBT but he never provided an adequate PBT sample. After failing to provide an adequate PBT sample, Officer Peck arrested Rome for DUI. Although not clear from the record on appeal, it seems that following his arrest, Rome submitted to an evidentiary breath test where he registered a breath alcohol content of .253. Officer Peck provided Rome with a DC-27 form which notified Rome that his driver's license would be suspended for DUI within 30 days unless he appealed to the KDOR. The DC-27 form also stated that Officer Peck had provided Rome with the "oral and written notices as required by K.S.A. 8-1001(k) and amendments thereto."

On April 20, 2015, Rome requested an administrative hearing with the KDOR. On August 24, 2015, the KDOR upheld Rome's driver's license suspension, finding that Officer Peck had reasonable grounds to believe that Rome was DUI. The KDOR specifically found that Officer Peck had given Rome the applicable K.S.A. 8-1001 advisories both orally and in writing.

On September 2, 2015, Rome filed a petition for review with the trial court, arguing that Officer Peck lacked reasonable grounds to request testing. On August 11,

2

2016, the trial court held an evidentiary hearing on Rome's petition for review where Officer Peck testified about stopping Rome for driving without his headlights on and ultimately arresting Rome for DUI. At the end of this hearing, Rome's attorney stated that he was "not exactly sure where to start based upon the current state of law . . . . The Kansas Supreme Court ha[d] yet to review its decision in *Nece* and *Ryce*." The trial court requested that the parties brief their arguments on the current state of the law as applied to Rome's case.

When Rome filed his brief, the United States Supreme Court had issued *Birchfield*, but our Supreme Court had not yet filed *Ryce II* and *Nece II*. In Rome's brief, Rome asserted that based upon *Ryce I*, *Nece I*, and *Birchfield*, "[PBTs] conducted prior to a lawful arrest [were] no longer admissible as they would not [constitute] searches incident to a lawful arrest." Even so, Rome explicitly conceded that "whatever the court's review of *Nece* and *Ryce* yields[,] it is unlikely to result in case law prohibiting the State from suspending an individual's driver's license in breath test only cases after a lawful arrest."

In the end, the trial court rejected Rome's argument, affirming the KDOR's suspension of Rome's driver's license. The trial court's order simply stated that "[t]he certifying officer had reasonable grounds to request that plaintiff submit to testing. [Rome's] petition is, therefore, denied."

*Should Rome's Driver's License Suspension be Upheld?*

Rome's sole argument on appeal is that the KDOR's suspension of his driver's license should be reversed because Kansas' implied consent law is facially unconstitutional. Nevertheless, Rome recognizes that he is raising this argument for the first time on appeal. Rome's attorney, who also represented him below, contends that given the timing of his case, he did consider making an argument that the Kansas implied

consent law was facially unconstitutional until *Ryce II* and *Nece II* were filed. He asks this court to consider his argument for the first time on appeal because it involves only a question of law arising on undisputed facts that is determinative of his case.

The KDOR responds that this court should not consider Rome's argument for the first time on appeal because Rome has failed to comply with Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 35), which states that "[e]ach issue must begin with citation to the appropriate standard of review . . . ." The KDOR also complains that Rome has failed to comply with Supreme Court Rule 6.02(a)(4) (2018 Kan. S. Ct. R. 34), the rule involving citation to the facts in the record on appeal.

Yet, the KDOR's arguments are not persuasive. By contending that his argument involves only a question of law, Rome has implicitly referenced the correct standard of review. Issues involving questions of law necessarily require that appellate courts exercise unlimited review. See *Pemco, Inc. v. Kansas Dept of Revenue*, 258 Kan. 717, Syl. ¶ 1, 907 P.2d 863 (1995) (holding "[a]n appellate court's review of questions of law is unlimited"). Moreover, the lack of citation to the record that the KDOR specifically takes issue with involves an undisputed fact. The KDOR complains about Rome's failure to cite where in the record this court can find that "the relevant facts are established by the administrative record and are not disputed by either party." But the key "relevant fact" Rome speaks of is that he was "processed under the Kansas Implied Consent Law." Since all persons arrested for DUI are processed under the Kansas implied consent law, citation to the record for this specific undeniable fact is unnecessary.

Next, this court has considered issues raised for the first time on appeal in driver's license suspension cases. Indeed, this court has considered a challenge regarding the constitutionality of K.S.A. 8-1001 when it was raised for the first time on appeal. In *Leverenz v. Kansas Dept. of Revenue*, No. 112,039, 2015 WL 5750535, at *6-7 (Kan. App. 2015) (unpublished opinion), this court considered Leverenz' argument that K.S.A.

2011 Supp. 8-1001 was unconstitutionally overbroad even though she never raised that argument below. The *Leverenz* court explained that although this court generally does not consider arguments raised for the first time on appeal, several exceptions exist, including when "the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case" and when "consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights." 2015 WL 5750535, at *6 (citing *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 [2008], *cert. denied* 555 U.S. 778 [2009]). The *Leverenz* court considered Leverenz' argument because it believed doing so was "necessary to determine the merits of [Leverenz'] case." 2015 WL 5750535, at *7.

Just like in *Leverenz*, we will consider Rome's newly asserted argument for the first time on appeal because it is necessary to determine the merits of his case. Moreover, Rome's case is more compelling than Leverenz' case because he has had the unique circumstance of being a plaintiff while the Kansas implied consent law was in limbo before our Supreme Court. Finally, as Rome has alleged, his argument clearly involves only a question of law that turns on undisputed facts, which would be finally determinative of his case; thus, his arguments do fall under an exception to the general rule that appellants cannot raise arguments for the first time on appeal. See also K.S.A. 2017 Supp. 77-621(c)(1) (providing that courts may review whether a statute is constitutional when considering cases brought under the Kansas Judicial Review Act).

We note in his brief to the trial court below that Rome's attorney *could have* made his current argument to the trial court despite his current contention to the contrary. As we explain later, the *Ryce II* and *Nece II* decisions merely reaffirmed the *Ryce I* and *Nece I* decisions. Thus, Rome's attorney had all the pertinent information he needed to make his current argument to the trial court. More importantly, Rome admitted that "whatever the court's review of *Nece* and *Ryce* yields[,] it is unlikely to result in case law prohibiting the State from suspending an individual's driver's license in breath test only cases after a

5

lawful arrest." Accordingly, Rome's case is not simply a case where the appellant is raising an issue for the first time on appeal; instead, it is a case where the appellant is taking a contrary position to the position that he took before the trial court. Simply put, it would be unfair to allow Rome to sandbag the trial court by implicitly conceding one theory before the trial court and then arguing for a completely different theory on appeal.

Indeed, Rome fails to acknowledge that his position on appeal is inconsistent with what he implicitly conceded before the trial court: that breath test only cases would not require reversal of a driver's license suspension after a lawful arrest. Nevertheless, for the sake of argument, we will address the merits of Rome's current argument.

On appeal, Rome contends that "the Kansas Implied Consent Law, as it is currently drafted, is facially unconstitutional as it requires that unconstitutionally coercive warnings be given before a test can be requested." Significantly, although Rome states that the entire Kansas implied consent law, K.S.A. 8-1001 et seq., is facially unconstitutional, his analysis actually focuses on the coercive nature of the implied consent advisories listed under K.S.A. 2017 Supp. 8-1001(k), which threaten criminal punishment under K.S.A. 2017 Supp. 8-1025. He believes that the suspension of his driver's license must be reversed because of the coercive nature of the implied consent advisories. Further, his arguments hinge on our Supreme Court's holdings in *Ryce I* and *II* and *Nece I* and *II* and the United States Supreme Court's holdings in *Birchfield*.

In *Ryce II*, 306 Kan. 682, Syl., our Supreme Court affirmed its holding in *Ryce I* that K.S.A. 2016 Supp. 8-1025—the statute that criminalizes withdrawing implied consent to an evidentiary test—was facially unconstitutional. Our Supreme Court determined that K.S.A. 2016 Supp. 8-1025 violated the Fourth Amendment to the United States Constitution because it punished persons for withdrawing their consent to an evidentiary breath test, even though persons have the right to withdraw consent under the Fourth Amendment. 306 Kan. at 683. In *Nece II*, our Supreme Court affirmed its holding

6

in *Nece I* that a person's consent to breath-alcohol testing was involuntary when that person's consent was obtained after threat of criminal punishment for refusing consent because it had reaffirmed K.S.A. 2016 Supp. 8-1025's unconstitutionality in *Ryce II*. 306 Kan. 679, Syl. Our Supreme Court reaffirmed its *Ryce I* and *Nece I* holdings after reconsidering the cases in light of the United States Supreme Court's decision in *Birchfield*. The *Birchfield* Court held the following: (1) that a person's consent to blood-alcohol testing obtained by threat of criminal prosecution for refusal did not constitute voluntary consent; and (2) that breath tests, but not blood tests, "may be administered as a search incident to a lawful arrest for drunk driving." 136 S. Ct. at 2185-86.

Nevertheless, the *Ryce I* and *II*, *Nece I* and *II*, and *Birchfield* decisions have no bearing on Rome's administrative driver's license suspension case. In *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 642, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015), our Supreme Court stressed that as it pertained to DUI, "civil and criminal proceedings are wholly separate from one another and are intended to serve two different purposes." K.S.A. 2017 Supp. 8-1020(t) specifically provides that a person's administrative driver's license suspension hearing "shall be independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence," and "[t]he disposition of those criminal charges shall not affect the suspension or suspension and restriction to be imposed under this section." In his brief, Rome has shown an unwillingness to acknowledge that he has wholly relied on criminal caselaw to argue against his administrative driver's license suspension.

Additionally, regardless of any coercion involved in Officer Peck obtaining Rome's evidentiary breath test, the exclusionary rule does not apply in the context of driver's license suspension cases. *Martin*, 285 Kan. at 646. In *Martin*, our Supreme Court explained that "in driver's license suspension proceedings, [the balancing of the benefits and costs of the exclusionary rule] tips in favor of the [KDOR] and against Martin and

7

other drivers" because "[t]he deterrent effect of the rule is already accomplished in the criminal arena." 285 Kan. at 646. As stressed by the KDOR in its brief, in the recent decision *Wright v. Kansas Dept. of Revenue*, No. 116,777, 2017 WL 6062260, at \*3-4 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* January 5, 2018, this court rejected an argument identical to Rome's argument because the exclusionary rule did not apply in the administrative driver's license suspension setting.

As explained by the *Wright* court, arguments like Wright's and Rome's that their driver's license suspensions should be reversed because the implied consent law advisories are unconstitutionally coercive are meritless for the following reasons:

> "'[A] petitioner may raise Fourth Amendment claims, but such claims have no practical effect (meaning such claims do not trigger the exclusion of resultant evidence) in the administrative context.' *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 396, 204 P.3d 562 (2009) (citing *Martin*, 285 Kan. at 646). Moreover, we are generally to avoid addressing unnecessary constitutional questions where valid alternative grounds for relief exist. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 658, 367 P.3d 282 (2016). Accordingly, we reject the invitation to expand the exclusionary rule to driver's license suspension proceedings." 2017 WL 6062260, at \*4.

Last, regardless of all the preceding problems, the KDOR's suspension of Rome's driver's license was appropriate under the good-faith exception to the exclusionary rule. Under the good-faith exception to the exclusionary rule, courts need not suppress evidence obtained by law enforcement officers during a warrantless search when those officers were reasonably relying on a statute that was later declared unconstitutional. *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011). Here, when Officer Peck provided Rome with the implied consent advisories as required under K.S.A. 2014 Supp. 8-1001(k), our Supreme Court had not yet filed either *Ryce I* or *Nece I*. Thus, when Officer Peck provided Rome with the implied consent advisories, he reasonably relied on a statute that was later found to be unconstitutional,

and the good-faith exception to the exclusionary rule applied. See *Wright*, 2017 WL 6062260, at *4 (applying the exception under the assumption the exclusionary rule applied in driver's license suspension proceedings).

In summary, Rome's argument that his driver's license suspension should be reversed because the Kansas implied consent law is facially unconstitutional fails. It fails because the criminal caselaw he relies upon has no bearing on the validity of his administrative driver's license suspension.

Affirmed.