**No. C-1810**

**Alan Charnes, Executive Director of the Department of Revenue, State of Colorado v. Jack C. Arnold**

(600 P.2d 64)

Decided September 17, 1979.                    Rehearing denied October 9, 1979.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, Anthony M. Marquez, Assistant Attorney General, for petitioner.

Zuckerman & Sobol, P.C., Daniel D. Plattner, for respondent.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

The executive director of the Colorado Department of Revenue (department) petitioned this court to review the decision of the Colorado Court of Appeals in which that court invalidated the department's suspension of the driver's license of respondent Jack Arnold under section 42-4-1202, C.R.S. 1973. *Arnold v. Charnes,* 41 Colo. App. 338, 589 P.2d 1373 (1978). We granted the petition. The basis for the court's decision was that Arnold's arrest was unlawful because it was made outside the arresting officer's jurisdiction and not in fresh pursuit. We disagree and therefore reverse.

The facts of this case are undisputed. On July 5, 1976, officer Graham of the Lakewood Police Department responded to a hit-and-run accident which had occurred in Lakewood, Jefferson County. Upon arriving at the location of the accident, he received a description of the driver who had fled the scene, the vehicle and its license plate number. The officer immediately ran a check on the license plate number and learned that the vehicle was registered to Arnold, whose address was four blocks away in the City and County of Denver. The officer promptly drove to that address, where he observed Arnold driving his vehicle into the driveway of his residence. Approximately ten to fifteen minutes had elapsed between the time of the officer's arrival at the scene of the accident and his arrival at Arnold's residence. Both Arnold and the vehicle fit the descriptions given to the officer. Arnold was arrested and refused to take a chemical sobriety test. Accordingly, his driver's license was eventually revoked by the department pursuant to the implied consent provisions of section 42-4-1202(3), C.R.S. 1973.

Arnold appealed the revocation of his license to the Denver District Court, which affirmed the action of the department. Arnold then appealed to the court of appeals, which reversed the decision on the basis that the arrest was unlawful, as stated above, and thus the provisions of the implied consent statute should not have been applied to Arnold.

The arrest plainly took place outside of officer Graham's jurisdiction. As such, it was unlawful unless it was made in fresh pursuit under section 16-3-106, C.R.S. 1973.[1] The court of appeals expressly based its decision on its determination that the police action in this case did not constitute fresh pursuit because officer Graham did not pursue the suspect's trail but merely followed a hunch and went to the listed address of the vehicle's owner.

The issue to be considered is thus whether this police action constituted fresh pursuit, as that term is used in section 16-3-106, C.R.S. 1973. "Fresh pursuit" is defined in section 16-3-104(1)(c), C.R.S. 1973:[2]

"'Fresh pursuit' means the pursuit without unnecessary delay of a person who has committed a crime, or who is reasonably believed to have committed a crime."

Although fresh pursuit obviously includes high-speed, Hollywood-style automobile chases, *People v. Roddy,* 188 Colo. 55, 532 P.2d 958 (1975), it

---

[1] Section 16-3-106, C.R.S. 1973, provides in pertinent part: "When any peace officer is in fresh pursuit of any alleged offender . . . and the alleged offender crosses a boundary line marking the territorial limit of his authority, such peace officer may pursue him beyond such boundary line and make the arrest . . . ."

[2] Although this definition was promulgated by the legislature to define "fresh pursuit" as that term is used in section 16-3-104, C.R.S. 1973, we find it persuasive in defining the same term as used in section 16-3-106, C.R.S. 1973.

also emcompasses less dramatic police action. This court has never promulgated precise standards defining what police activity can be categorized as fresh pursuit; however, the plain language of section 16-3-104(1)(c), C.R.S. 1973, and pertinent cases from other jurisdictions indicate three criteria to be utilized in this analysis.

One crucial factor is that the police must act without unnecessary delay. *See Schindelar v. Michaud,* 411 F.2d 80 (10th Cir. 1969). This criterion is apparent from the statutory language itself.

Another factor is that the pursuit must be continuous and uninterrupted, but there need not be continuous surveillance of the suspect or uninterrupted knowledge of his whereabouts. *United States v. Oaxaca,* 569 F.2d 518 (9th Cir. 1978); *People v. Clark,* 46 Ill. App.3d 240, 360 N.E.2d 1160 (1977); *United States v. Getz,* 381 F.Supp. 43 (E.D. Pa. 1974); and *Reyes v. Slayton,* 331 F.Supp. 325 (W.D. Va. 1971).

A final consideration, implicit in the statute and in the cases cited *supra,* is the relationship in time between the commission of the offense, the commencement of the pursuit, and the apprehension of the suspect. The greater the length of time, the less likely it is that the circumstances under which the police acted were sufficiently exigent to justify an extrajurisdictional arrest.

■ In this case, the police responded immediately to the call and promptly pursued the only lead available — the address of the owner of the vehicle. Upon arriving at that address, the police officer observed and apprehended the suspect. The fact that the officer did not follow the suspect's route does not preclude the characterization of this action as fresh pursuit. That determination is governed by the three factors set forth above and is clearly met under the facts of this case.

The judgment of the court of appeals is reversed, and we return the cause to that court with directions to remand it for reinstatement of the trial court's judgment.