[No. 7182–1–III. Division Three. May 1, 1986.]

THE CITY OF WENATCHEE, *Respondent*, v. JAMES WARREN DURHAM, *Petitioner*.

*DeForest N. Fuller* and *Fuller & Cassel, Inc., P.S.,* for petitioner.

*Larry M. Carlson, City Attorney,* and *Allan Galbraith, Assistant,* for respondent.

McINTURFF, A.C.J.—James Warren Durham was convicted for driving while license suspended, RCW 46.20.342. He sought and was granted discretionary review, alleging the arrest was invalid. We agree and reverse.

At about 9:30 a.m. on Sunday, September 30, 1984, Mr. Durham was driving a pickup truck southbound on Mission Avenue, within the Wenatchee city limits and Chelan County. Wenatchee Police Officer Kenneth Britt, who was parked at the corner of Ferry and Mission Streets, observed Mr. Durham's vehicle and noted it had neither an outside left rearview mirror nor a vehicle hood, both of which are traffic infractions. RCW 46.37.400, .517. Officer Britt entered traffic and began following Mr. Durham through the Ferry and Mission Streets intersection and into the turn lane for the Columbia River bridge. Without activating the vehicle siren or flashing lights, Officer Britt followed Mr. Durham over the bridge, crossing the Columbia River, which serves as the boundary line between Chelan and

Douglas Counties.

Once over the bridge and into Douglas County, the officer stopped Mr. Durham, warned him of the traffic infractions, and asked to see his driver's license. Initially, Mr. Durham indicated he left his license at home and that his name was Clay Durham, the name of his older brother. The officer then suggested he follow Mr. Durham to his home to obtain his driver's license and, while en route, was informed by radio dispatch that Mr. Durham's license had been suspended. Mr. Durham was then arrested and cited for driving while license suspended and obstructing an officer. RCW 46.20.342; RCW 9A.76.020.

In a pretrial motion in District Court, Mr. Durham asked that the court find as a matter of law that his arrest was unlawful, having taken place outside of the city of Wenatchee and Chelan County. The court found the first charge, obstructing an officer, was committed only in Douglas County and dismissed it. The court refused to dismiss the driving while license suspended charge, concluding the officer had made the extrajurisdictional arrest "in fresh pursuit". The Superior Court affirmed the conviction.

Mr. Durham's only contention is that his arrest was illegal because Officer Britt was outside his jurisdiction when the initial detention was made. Generally, municipal police officers have no official power to arrest an offender outside the geographical boundaries of their municipality. *State v. Eldred,* 76 Wn.2d 443, 457 P.2d 540 (1969); *Somday v. Rhay,* 67 Wn.2d 180, 406 P.2d 931 (1965); *State v. Harp,* 13 Wn. App. 239, 242, 534 P.2d 842 (1975); *Irwin v. Department of Motor Vehicles,* 10 Wn. App. 369, 371, 517 P.2d 619 (1974); E. Fisher, *Arrests* § 142 (1967); *see also State v. Koetje,* 35 Wn. App. 157, 665 P.2d 432 (1983) (no authority for arrest beyond jurisdictional bounds absent special commission).[1] The concept of reasonableness embodied in

---

[1]We note that on April 22, 1985, the State enacted the Washington Mutual Aid Peace Officers Powers Act of 1985, RCW 10.93, modifying "current artificial barriers" to mutual aid in cooperative enforcement of laws among peace officers.

the Fourth Amendment, and article 1, section 7 of the Washington Constitution presupposes an exercise of lawful authority by a police officer. When a law enforcement official acts beyond his or her jurisdiction, the resulting deprivation of liberty is just as unreasonable as an arrest without probable cause. *See United States v. Di Re,* 332 U.S. 581, 595, 92 L. Ed. 210, 68 S. Ct. 222 (1948). *See also State v. Bonds,* 98 Wn.2d 1, 8, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831, 78 L. Ed. 2d 112, 104 S. Ct. 111 (1983).

One exception to this rule, which the trial court found applicable and the City urges this court to apply, is that officers may make an official arrest outside their jurisdiction when in fresh pursuit. The fresh pursuit exception allows officers who attempt to detain or arrest within their territorial jurisdiction to continue to pursue a fleeing suspect even though the suspect transverses jurisdictional lines. *See State v. Counts,* 99 Wn.2d 54, 60, 659 P.2d 1087 (1983) (hot pursuit involving warrantless entry into defendant's home).

The rationale supporting this rule is that sometimes desperate criminals will head straight across jurisdictional lines following the commission of a crime, knowing there is relative safety on the other side. Once in a foreign jurisdiction, the pursuing officer from the jurisdiction where the crime was committed is no longer an officer. The fresh pursuit exception hamstrings these criminals by authorizing the pursuing officer to stop and arrest the fleeing criminal in the foreign jurisdiction.

 Based upon our review of the common law from this and other jurisdictions, five criteria are to be used in an analysis of fresh pursuit: (1) that a felony occurred in the jurisdiction;[2] (2) that the individual sought must be

---

This act expands jurisdictional authority under certain circumstances, *see* RCW 10.93.070, but is inapplicable here since the act was not effective until July 1, 1985. RCW 10.93.900.

[2]RCW 10.93.120 expands the fresh pursuit exception to cover those individuals who are believed to have committed violations of "traffic or criminal laws".

attempting to escape to avoid arrest or at least know he is being pursued; (3) that the police pursue without unnecessary delay; (4) that the pursuit must be continuous and uninterrupted, though there need not be continuous surveillance of the suspect nor uninterrupted knowledge of his location; and (5) that there be a relationship in time between the commission of the offense, commencement of the pursuit, and apprehension of the suspect. *United States v. Santana,* 427 U.S. 38, 43, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976); *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 298, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967); *Counts,* at 60; *State v. Ferrell,* 218 Neb. 463, 356 N.W.2d 868 (1984); *Commonwealth v. Fiume,* 292 Pa. Super. 54, 436 A.2d 1001, 1005 (1981); *Charnes v. Arnold,* 198 Colo. 362, 600 P.2d 64, 65 (1979); *State v. Sorenson,* 180 Mont. 269, 590 P.2d 136, 139 (1979); *Settle v. State,* 679 S.W.2d 310, 317 (Mo. Ct. App. 1984), *cert. denied,* ___ U.S. ___, 86 L. Ed. 2d 717, 105 S. Ct. 2701 (1985); J. Hall, *Search and Seizure* § 7:6, at 207 n.11 (1982 & Supp. 1985). We have found no case in which the fresh pursuit doctrine was applied to traffic infractions, which are civil offenses.[3] *See* RCW 46.63.060(2)(b); *State v. Hehman,* 90 Wn.2d 45, 48–50, 578 P.2d 527 (1978).

We hold the court erred in applying the fresh pursuit exception. Officer Britt initially observed only the commission of traffic infractions, not felonies. Furthermore, it is unclear whether the second and third criteria, which examine if the officer pursued the suspect, have been satisfied. While pursuit does not imply a fender–smashing Hollywood style chase scene, it does connote something more than

---

Hence, the felony requirement may be eliminated by this statute.

[3]Since the observed traffic infractions are not felonies or misdemeanors constituting a breach of peace, Officer Britt's actions cannot be justified as a citizen's arrest. *State v. Jack,* 63 Wn.2d 632, 637, 388 P.2d 566, *cert. denied,* 379 U.S. 856, 13 L. Ed. 2d 59, 85 S. Ct. 107 (1964), *reh'g denied,* 380 U.S. 946, 13 L. Ed. 2d 966, 85 S. Ct. 1027 (1965); *State v. Gonzales,* 24 Wn. App. 437, 439, 604 P.2d 168 (1979).

mere casual following. *See, e.g., Santana,* at 43; *United States v. Getz,* 381 F. Supp. 43, 46 (E.D. Pa. 1974), *aff'd,* 510 F.2d 971 (3d Cir.), *cert. denied,* 421 U.S. 950, 44 L. Ed. 2d 105, 95 S. Ct. 1684 (1975); *State v. Ferrell,* 356 N.W.2d at 870; *Counts,* at 60; *Fiume,* 436 A.2d at 1003–04. We hold the "flight" requirement was not satisfied. There is no evidence Mr. Durham was attempting to escape or fleeing the jurisdiction to avoid arrest. Nor is there evidence that Mr. Durham knew he was being pursued while in Wenatchee.

The court was apparently swayed by the officer's testimony that stopping Mr. Durham before crossing the bridge may have been unsafe, given the traffic congestion. But the officer could have signaled Douglas County officers to assist in an arrest, or activated his siren and vehicle lights before leaving Chelan County. Since a felony must have been committed and the individual must be attempting to escape, or at least know that he was pursued, we hold the officer was without authority of law to make the arrest.

We hold the evidence obtained during the arrest should be suppressed since it was obtained pursuant to an unauthorized and therefore illegal arrest. *See State v. Mathe,* 102 Wn.2d 537, 544–45, 688 P.2d 859 (1984); *State v. Bonds, supra* at 24 (Utter, J., dissenting); *State v. White,* 97 Wn.2d 92, 104, 640 P.2d 1061 (1982).[4]

The judgment of the Superior Court is reversed.

MUNSON and THOMPSON, JJ., concur.

---

[4]*Accord, State v. Coyle,* 95 Wn.2d 1, 14, 621 P.2d 1256 (1980); *State ex rel. McDonald v. Whatcom Cy. Dist. Court,* 92 Wn.2d 35, 37–38, 593 P.2d 546 (1979); *State v. Johnson,* 71 Wn.2d 239, 244, 427 P.2d 705 (1967); *Pasco v. Titus,* 26 Wn. App. 412, 416–17, 613 P.2d 181 (1980); *see also State v. Hehman,* 90 Wn.2d 45, 50, 578 P.2d 527 (1978); *State v. Miles,* 29 Wn.2d 921, 933, 190 P.2d 740 (1948); *State v. Krieg,* 7 Wn. App. 20, 26, 497 P.2d 621 (1972). *But cf. State v. Bonds, supra* at 10 (evidence need not be suppressed where arresting officers "violate, not statutes of this state, but statutes of a neighboring state.").