[No. 16927-8-III. Division Three. February 11, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS LAWRENCE WATERS, JR., *Appellant*.

970

R. John Sloan, Jr., for appellant.

Rick Weber, Prosecuting Attorney, and Karen C. Calhoun-Wells, Deputy, for respondent.

SWEENEY, J. — Generally, an affidavit of prejudice must be filed before a case is set for trial in a one-judge county. RCW 4.12.050. And, as we will conclude, an affidavit of prejudice against a visiting judge in a one-judge county is timely if filed before the judge has made a discretionary ruling.

Okanogan County is a one-judge county. During a Thursday afternoon pretrial conference, the resident judge, Judge Jack Burchard, told the lawyer for defendant Thomas Waters that he would not be presiding over Mr. Waters' trial the following Monday and that a substitute judge, Judge Kenneth Jorgensen, would instead preside. On Monday morning, the first day of trial, Mr. Waters filed an affidavit of prejudice. Judge Jorgensen concluded that the affidavit was untimely and refused to step down. The dispositive question is whether that affidavit was timely. We conclude that the affidavit was timely, reverse the trial court's ruling to the contrary and remand for a new trial.

FACTS

The Okanogan River divides the city of Omak. The

Colville Indian Reservation includes East Omak. Law enforcement in East Omak is provided primarily by the City of Omak. Mr. Waters is an enrolled member of the Colville Confederated Tribes. Frank Rogers is an Omak City Police Sergeant, a commissioned County Deputy Sheriff, and a commissioned Colville Tribal Law Enforcement Officer. Omak Police Officer Pete Shove is also a commissioned tribal officer.

On February 20, 1997, at around midnight, Sergeant Rogers and Officer Shove were on patrol in a marked police car. In West Omak, they saw Mr. Waters' car stopped at the stoplight. When the light changed, he revved his car engine loudly, squealed its tires, and crossed the centerline toward the police. These are civil traffic infractions. The officers turned around and followed the car across the river into East Omak. They activated their emergency lights. Mr. Waters refused to stop. He raced through a residential area in East Omak, exceeding the speed limit and running stop signs. The police activated their siren.

With Sergeant Rogers and Officer Shove in pursuit, after an hour-long, high-speed chase on state highways, Mr. Waters' car turned off Highway 155 and entered Upper HUD, a tribal reservation trust property housing project in Nespelem. Sergeant Rogers, assisted by Tribal Officer Bob Merriman and Officer Shove, arrested Mr. Waters for felony eluding, driving while license suspended, driving while under the influence, and resisting arrest.

Mr. Waters was arraigned in Okanogan County Superior Court and his case was set for trial. Before trial, he moved to dismiss, arguing that the officers did not have authority to arrest him on the reservation. Judge Burchard denied the motion. Mr. Waters waived his speedy trial right until July 31, 1997. Trial was set for Monday, July 14, before Judge Burchard. On Thursday, July 10, Judge Burchard assigned the case to visiting Judge Kenneth Jorgensen.

On Monday morning, before trial, Mr. Waters filed an affidavit of prejudice against Judge Jorgensen. Judge Jorgensen rejected it as untimely. After a bench trial on stipu-

lated facts, he found Mr. Waters guilty on all four charges. Judge Burchard sentenced Mr. Waters to 24 months, an exceptional sentence, on the ground the standard range was clearly too lenient in light of Mr. Waters' extensive unscored misdemeanor history.

## DISCUSSION

Affidavit of Prejudice

Any party may establish prejudice by motion, supported by affidavit, that the judge before whom an action is pending is prejudiced. In counties where there is but one resident judge, the motion and affidavit must be filed not later than the day on which the case is called to be set for trial. RCW 4.12.050.

██ Our Supreme Court has made it abundantly clear that any party to a suit has the right to remove one superior court judge from a case subject only to the timely filing of a motion and affidavit in compliance with RCW 4.12.040 and .050. *State v. Cockrell*, 102 Wn.2d 561, 565, 689 P.2d 32 (1984). Under the plain wording of the rule, once a party complies with the terms of the statute, prejudice is deemed established and the judge is " 'divested of authority to proceed further into the merits of the action.' " *Id.* (quoting *State v. Dixon*, 74 Wn.2d 700, 702, 446 P.2d 329 (1968)). No showing of actual prejudice is required. *Marine Power & Equip. Co. v. Department of Transp.*, 102 Wn.2d 457, 460, 687 P.2d 202 (1984). All considerations of judicial efficiency are secondary. *Id.* at 464. But in a one-judge county, the affidavit of prejudice must be filed on or before the date the case is called to be set for trial. RCW 4.12.050.

██ We apply this statute to effect its legislative intent. *State v. McCraw*, 127 Wn.2d 281, 295, 898 P.2d 838 (1995).

██ The State urges us to apply the "one-judge county rule" liberally. But to do so ignores its purpose. Underlying the requirement of early filing of an affidavit of prejudice is

the fact that in a one-judge county the defendant knows who will try the case—the only judge in the county. That assumption fails, however, when, as here, one business day before the trial a visiting judge is substituted.

Any other application of this statutory scheme would effectively gut the protection of the statute. A party must file an affidavit of prejudice before trial is set in a one-judge county to avoid the scheduling havoc that would follow last minute filings.

Here, Mr. Waters and his attorney moved toward trial assuming that the trial judge would be the county's only judge, Judge Burchard. It was not until the Thursday preceding the start of his trial on the following Monday that Mr. Waters' lawyer knew that the trial judge would not be Judge Burchard, but instead would be Judge Jorgensen. Satisfying the deadline then imposed by RCW 4.12.050, the one-judge county rule, thus became impossible.

The only relevant requirement, given the change of judges, should have been whether the judge had made a discretionary ruling. RCW 4.12.050. Judge Jorgensen had not. The motion therefore was timely.

Here, 13 days remained in the speedy trial period.

■ The State argues that the affidavit was a delaying tactic. It may well have been, but motive is irrelevant. *Marine Power*, 102 Wn.2d at 461-62. Both the defendant and the State may make motions, schedule witnesses, and make objections because they believe it to be in the best interests of their client. Our inquiry is whether the tactic is legal.

The State also complains that Mr. Waters showed no prejudice because the case was not tried to a jury but was submitted on police reports. Again, he need not show actual prejudice. *Id.* at 460.

The affidavit of prejudice was timely; the trial court's ruling to the contrary is reversed and the case is remanded for a new trial.

We address the remainder of Mr. Waters' assignments of error since they will be issues on retrial.

Jurisdiction

Mr. Waters contends that the court lacked jurisdiction because he was arrested on the reservation and forcibly returned to Omak.

■ Where the location of the crime is not in dispute, jurisdiction is a matter of law which we review de novo. *State v. L.J.M.*, 129 Wn.2d 386, 396, 918 P.2d 898 (1996). Here the court had both subject matter and personal jurisdiction.

*Subject Matter Jurisdiction.* "The superior court shall have original jurisdiction . . . in all criminal cases amounting to felony . . . ." WASH. CONST. art. IV, § 6 (amend. 28); RCW 2.08.010; *State v. Bowman*, 69 Wn.2d 700, 703, 419 P.2d 786 (1966). This was a felony criminal prosecution.

■ ■ *Personal Jurisdiction.* If the defendant enters a plea of not guilty and is in court on the day of trial, the court has jurisdiction over his person. *State v. Ryan*, 48 Wn.2d 304, 305, 293 P.2d 399 (1956). If the court has jurisdiction over the defendant, it is not a ground for dismissing a criminal prosecution that he was not lawfully arrested. *Davis v. Rhay*, 68 Wn.2d 496, 499, 413 P.2d 654 (1966). "No authority has been cited to this court which requires dismissal of a charge merely because of an illegal arrest. We hold it does not." *City of Pasco v. Titus*, 26 Wn. App. 412, 417, 613 P.2d 181, *review denied*, 94 Wn.2d 1005 (1980). This is the rule articulated in *Ker v. Illinois*, 119 U.S. 436, 444, 7 S. Ct. 225, 30 L. Ed. 421 (1886) and *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S. Ct. 509, 96 L. Ed. 541 (1952), and generally followed in Washington. *Titus*, 26 Wn. App. 412.

■ Mr. Waters appeared and pleaded not guilty. His pretrial motion to dismiss does not allege lack of superior court jurisdiction. The motion and counsel's trial brief in support of the motion assert only that the arrest was illegal and any resulting evidence should be suppressed.

No Washington case has applied the *Ker-Frisbie* rule to an Indian jurisdiction dispute, but most other states do ap-

ply the rule to extradition from Indian reservations. *See, e.g., State v. Lupe,* 181 Ariz. 211, 889 P.2d 4 (1994); *Primeaux v. Leapley,* 502 N.W.2d 265 (S.D. 1993).[1] In arguing for an exception here, Mr. Waters relies on the New Mexico case of *Benally v. Marcum,* 89 N.M. 463, 553 P.2d 1270 (1976), which rejected the *Ker-Frisbie* doctrine as applied to extradition from an Indian reservation.

*Benally* is distinguishable on its facts. Mr. Benally was charged with municipal code misdemeanor violations, not a felony. And *Benally*'s holding rests on the absence of state jurisdiction because there was no felony involved. Therefore, the "fresh pursuit" doctrine did not apply. *Id.* at 466.

Here, the charge against Mr. Waters was felony eluding. The Omak police therefore had authority to arrest Mr. Waters, if the arrest followed a fresh pursuit.

Fresh Pursuit

■ The Washington Mutual Aid Peace Officer Powers Act of 1985 authorizes peace officers to enforce state laws throughout the territorial bounds of the state when the officer is in fresh pursuit. RCW 10.93.070(6). Fresh pursuit empowers an officer to arrest criminal or traffic law violators and take them into custody anywhere in the state, including a reservation. RCW 10.93.120(1)(a); *City of Wenatchee v. Durham,* 43 Wn. App. 547, 550, 718 P.2d 819 (1986). An arrest is lawful under the fresh pursuit statute if: (1) a felony is committed within the arresting officer's jurisdiction; (2) the suspect attempts to flee, or at least knows he is being pursued; (3) pursuit is commenced with no unnecessary delay; (4) pursuit is continuous and uninterrupted; and (5) there is a relationship in time between the commission of the offense, commencement of the pursuit, and the apprehension of the suspect. *Id.* at 550-51

---

[1]*See* Mary C. Gordon, Note, United States v. Alvarez-Machain: *An Unexpected Ally for Native American Tribal Authority,* 1993 UTAH L. REV. 875; Judith V. Royster & Rory SnowArrow Fausett, *Fresh Pursuit Onto Native American Reservations: State Rights To Pursue Savage Hostile Indian Marauders Across The Border,* 59 U. COLO. L. REV. 191 (1988).

(citing *United States v. Santana*, 427 U.S. 38, 43, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976)).

 Mr. Waters contends no felony was committed in the arresting officer's jurisdiction. He is wrong. The State has criminal and civil jurisdiction over Indians on tribal land for the operation of motor vehicles on public streets, alleys, roads and highways. RCW 37.12.010(8); *Confederated Tribes of Colville Reservation v. Washington*, 938 F.2d 146, 147 n.1 (9th Cir. 1991), *cert. denied*, 503 U.S. 997 (1992).

The events here happened on public roads. He nonetheless argues that the pursuit was unlawful from its inception because the Omak police lacked jurisdiction to stop Mr. Waters initially for civil infractions in Omak.

 Everybody, with or without probable cause for arrest, is required to stop for the police. RCW 46.61.024. Once the police car displayed its flashing lights, Mr. Waters was required to stop, even in the absence of an infraction. Everything after crossing the bridge was felony eluding justifying the pursuit outside the jurisdiction. It is the arrest, not the initiation of the pursuit, which requires the commission of a felony. The felony must occur in the home jurisdiction to create jurisdiction for an arrest in the foreign jurisdiction. Here, the felony of attempting to elude commenced in East Omak and continued on the state highways.

Police had authority to arrest because they were in fresh pursuit. *Durham*, 43 Wn. App. at 550.

 The State made a prima facie showing of jurisdiction by proving that an element of the offense occurred in Washington. The "burden of contesting" then shifted to Mr. Waters to produce evidence sufficient to defeat state jurisdiction. *L.J.M.*, 129 Wn.2d at 395-96. He did not do this.

Other Authority to Arrest

 Moreover police had authority to arrest Mr. Waters based on their status as county and tribal officers. The court commented from the bench in denying the motion to

dismiss that Sergeant Rogers is a commissioned Okanogan County Deputy Sheriff.[2] Both Sergeant Rogers and Officer Shove were commissioned tribal law enforcement officers. A county deputy sheriff is authorized to arrest on the reservation. *Somday v. Rhay*, 67 Wn.2d 180, 181, 406 P.2d 931 (1965). If the arresting officers were commissioned tribal police, they had authority to arrest Mr. Waters on the reservation.

*Consent.* The Washington Mutual Aid Peace Officer Powers Act of 1985 empowers qualified peace officers to enforce traffic and criminal laws on the reservation with the written consent of the tribal chief of police. RCW 10.93.070(1). Mr. Waters contends the consent here was not effective. We disagree.

■ An identification card was issued to Omak City Police Sergeant Frank Rogers by Tribal Chief of Police John Goss's predecessor, John Dick, identifying Sergeant Rogers as a commissioned tribal police officer, and was "Good Until Revoked." The consent was therefore of unlimited duration. A letter from Chief Goss to the Omak City Police Chief listed by name the Omak police officers and commissioned them as tribal law enforcement officers authorized to make arrests under the Colville Tribes Laws and Ordinances. Again, it has no expiration date. Mr. Waters contends the Goss consent expired because it was never renewed by Chief Goss's successor. But he cites to no authority for this proposition.

He also contends any consent was invalid because it was not authorized by COLVILLE TRIBAL CODE 10.1.01.

The tribal chief's duties expressly include responsibility for and charge over all tribal police functions on the reservation and also "[t]o insure cooperation with other law enforcement agencies." COLVILLE TRIBAL CODE 10.2.01(a), (h). Inherent authority of the police chief to consent to state jurisdiction is, therefore, implied in the tribal code.

---

[2]Report of Proceedings at 5-6. This is unverified in the record.

Mr. Waters presented evidence that, after his arrest, tribal leaders discussed possible future plans for a meeting to review concurrent jurisdiction between city and tribes, but only if sufficient interest could be mustered within the tribe. Even if true, this does not vitiate the grant of authority in effect at the time of Mr. Waters' arrest.

The arresting officers had authority to pursue and arrest Mr. Waters.

## Deference to Tribal Authority

■■■ Finally, Mr. Waters contends that due deference to tribal authority precludes extradition under all circumstances. In determining whether a state action infringes on tribal sovereignty, one consideration is whether the tribe has a tradition of self-government in the area. Judith V. Royster & Rory SnowArrow Fausett, *Fresh Pursuit Onto Native American Reservations: State Rights To Pursue Savage Hostile Indian Marauders Across The Border,* 59 U. COLO. L. REV. 191, 265 (1988). We can find no Colville tradition of self-government for hot pursuit extradition. In fact, the record contains evidence to the contrary.

The court noted that the Colville Tribe does not have its own jail and therefore routinely uses the Omak jail. The Colville extradition procedure provides for "cold" intrusions onto the reservation to execute existing warrants:[3]

> (a) If a person is charged with violation of the laws of any other tribe or reservation or the federal or a state government, the Court may order that he be delivered up to the proper authority, provided that a copy of a warrant, or proof of its existence, is presented to a judge of the Court, and that such appears to the Court to be in the best interest of justice.
>
> . . . .
>
> (c) When the person is apprehended, it shall be the duty of the Chief of Police to notify the proper authority of his ap-

---

[3]This is consistent with most, if not all tribal codes. Royster & Fausett, *supra,* at 269 n.183.

prehension, and he may be detained in the Tribal jail for a period not to exceed 24 hours from the time of apprehension.

COLVILLE TRIBAL CODE 2.1.02.

By comparison, Washington law expressly provides for extradition in the case of hot pursuit. RCW 10.89.010; RCW 10.89.020.

Washington's hot pursuit extradition statute expressly permits any arrest in this state which otherwise would be lawful. RCW 10.89.030. Absent contrary language, we see no reason to read a contrary provision into the tribal code. We conclude, therefore, that the tribal extradition procedures were not violated.

Reversed and remanded for a new trial in accordance with this opinion.

BROWN and KATO, JJ., concur.