765 So.2d 76 (2000)
Jerry PORTER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-1425.
District Court of Appeal of Florida, Fourth District.
August 23, 2000.
Yasmin G. Jacob of Yasmin G. Jacob, Attorney at Law, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robert R. Wheeler, Assistant Attorney General, West Palm Beach, for appellee.

*77 EN BANC

HAZOURI, J.
Jerry Porter appeals from his conviction and sentence for robbery with a weapon. Porter raises four points on appeal. We find none of these points warrant a reversal but address only the point related to the trial court's denial of Porter's motion to suppress. Because we find that the officers who arrested Porter were in "fresh pursuit," we hold that the trial court properly denied Porter's motion to suppress and affirm Porter's conviction and sentence.
The ruling of the trial court on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the reviewing court will interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling. See McNamara v. State, 357 So.2d 410, 412 (Fla.1978); Glover v. State, 677 So.2d 374, 376 (Fla. 4th DCA 1996); State v. Houston, 616 So.2d 595, 596 (Fla. 4th DCA 1993). While we are required to accept the trial court's determination of the historical facts leading to the search, a defendant is entitled to a de novo review of whether the application of the law to the historical facts establishes an adequate basis for the trial court's finding of probable cause. See Ornelas v. United States, 517 U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).
On May 17, 1998, at approximately 10:59 p.m., Pompano Beach police officers received a BOLO that an armed robbery had occurred in the vicinity of Dixie Highway and Atlantic Boulevard in Pompano Beach, Florida. The BOLO specified that the perpetrators of the crime were four black males who left the scene in a white, four-door older model Cadillac. The BOLO also indicated that the Cadillac was headed west on Atlantic Avenue in the direction of 1-95. When the BOLO came over the radio, Pompano Beach police officers Romb and Fletcher were traveling on Dixie Highway and Racetrack Road, an area in close proximity to the crime and to I-95.
In response to the BOLO, and based on additional information reported by an off-duty police officer that a white Cadillac was observed getting on I-95 in a southbound direction, Officers Romb and Fletcher immediately drove a short distance and entered I-95 southbound at Cypress Creek Road. Officers Romb and Fletcher were unable to see or locate the Cadillac when they first entered I-95. The officers continued to travel south on I-95 and pulled over into the left hand emergency lane to wait to see if the Cadillac was in fact southbound on I-95. The officers continued south past Commercial Boulevard, which put them in an area approximately five to seven miles from the alleged crime scene and in the city of Fort Lauderdale. The officers drove slowly, watching for any vehicle matching the description given in the BOLO. Within three to three and one-half minutes of receiving the BOLO, the officers spotted a white, four-door Cadillac in the far left lane approaching them from behind. As the Cadillac passed the officers, they observed it traveling at a high rate of speed and that it was being driven by a black male. Officers Romb and Fletcher immediately began to follow the white Cadillac, as it met the description in the BOLO. As the officers got closer, they were able to ascertain that at least four black males were in the vehicle.
The officers followed the vehicle for approximately one and one-half miles and then put on their flashing lights, signaling the driver to pull over. After the police lights were activated, the vehicle continued to travel at a high rate of speed for approximately another mile and then exited 1-95 at Sunrise Boulevard, which is within the city limits of Fort Lauderdale. The officers followed the vehicle as it traveled west on Sunrise Boulevard and it thereafter pulled into a nearby apartment complex located at N.W. 27th Avenue. All *78 four occupants immediately tried to flee from the vehicle. Officers Romb and Fletcher were able to detain the four occupants. Once the occupants were safely secured, the officers approached the Cadillac and saw through the car windows several items that met the descriptions of items taken during the robbery. The four occupants were arrested for robbery and all relevant evidence was seized. It was undisputed that the arrest and seizure took place within the city of Fort Lauderdale and was effectuated by Pompano Beach police officers.
Based upon the foregoing historical facts, the trial court concluded that pursuant to section 901.25, Florida Statutes (1997), the Pompano Beach police officers were in fresh pursuit and entitled to effectuate a valid arrest outside their jurisdiction which thereafter led to a valid search and seizure. Generally, an officer of a county or municipality has no official power to arrest an offender outside the boundaries of the officer's county or municipality. See Huebner v. State, 731 So.2d 40, 44 (Fla. 4th DCA 1999) (citation omitted). However, "[t]he fresh pursuit exemption allows officers who attempt to detain or arrest within their territorial jurisdiction, to continue to pursue a fleeing suspect even though the suspect crosses jurisdictional lines. The power to arrest after fresh pursuit presupposes that the officer had legally sufficient grounds to detain or arrest before they left their jurisdiction." Id. (citations omitted).
"Fresh pursuit" and "arrest outside the jurisdiction" are defined, in pertinent part, in section 901.25, Florida Statutes (1997), as follows:
(1) The term "fresh pursuit" as used in this act shall include fresh pursuit as defined by the common law and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. It shall also include the pursuit of a person who has violated a county or municipal ordinance or chapter 316 or has committed a misdemeanor.
(2) Any duly authorized state, county, or municipal arresting officer is authorized to arrest a person outside the officer's jurisdiction when in fresh pursuit. Such officer shall have the same authority to arrest and hold such person in custody outside his or her jurisdiction, subject to the limitations hereafter set forth, as has any authorized arresting state, county, or municipal officer of this state to arrest and hold in custody a person not arrested in fresh pursuit.
Under the common law doctrine of fresh pursuit, an officer may pursue a felon or a suspected felon, with or without a warrant, into another jurisdiction and arrest him there. According to the Court of Appeals of Washington:
The rationale supporting this rule is that sometimes desperate criminals will head straight across jurisdictional lines following the commission of a crime, knowing there is relative safety on the other side. Once in a foreign jurisdiction, the pursuing officer from the jurisdiction where the crime was committed is no longer an officer. The fresh pursuit exception hamstrings these criminals by authorizing the pursuing officer to stop and arrest the fleeing criminal in the foreign jurisdiction.
City of Wenatchee v. Durham, 43 Wash. App. 547, 718 P.2d 819, 821 (1986).
In arriving at the conclusion that section 901.25 entitled the Pompano Beach police officers to arrest Porter outside their jurisdiction, the trial court found the following:
The evidence reveals that the alleged robbery occurred at a location near Dixie Highway and Atlantic Boulevard. The court notes that such an area is within a few miles of the entry into the city of Fort Lauderdale. Although Officers *79 Romb and Fletcher were in the city of Fort Lauderdale when they initially observed the defendants and when they effectuated their arrest, such an area is not far in time or distance from where the alleged robbery had occurred. The area in which the officers waited to see if a vehicle matching a description in the BOLO would pass is a logical travel route for the perpetrators to take and in fact, they did take. Once in pursuit of the vehicle due to its match of the description given in the BOLO, the officers were in hot or fresh pursuit.
Porter argues that our recent holding in State v. Greer, 761 So.2d 343 (Fla. 4th DCA 1999), compels the finding that the Pompano Beach police officers were not in fresh pursuit and thus the arrest and search and seizure are invalid. In Greer, a burglary had occurred on the Seminole Indian reservation. A resident of the Indian reservation discovered two men burglarizing his vehicle parked outside his residence located on the reservation. He called the Seminole police department and described the perpetrators and their vehicle. The police department issued a BOLO for the vehicle and its occupants. An officer of the department located the vehicle within ten minutes at a car wash outside the Indian reservation. Greer moved to suppress his confession and subsequent search and seizure on the ground that the Seminole police were beyond their jurisdiction when they detained and arrested him. The trial court agreed, holding that the officer was not in "fresh pursuit" and was thus impermissibly outside of his jurisdiction when he detained Greer. In affirming the trial court, we held:
In the instant case, the burglary had been committed, the perpetrators had departed, and the crime had been reported to the authorities. A BOLO was issued for the vehicle. The vehicle was not spotted within the jurisdiction but was first located outside the Indian reservation. Therefore, there was no pursuit from within the jurisdiction into the new jurisdiction. The doctrine of fresh pursuit does not apply.
Id.
Section 901.25, Florida Statutes (1997), however, contains none of the restrictions on fresh pursuit as does the above quoted portion of Greer. Section 901.25 makes no mention that the crime committed must be one which is continuing during the pursuit nor does it require the police officers to spot the vehicle within their jurisdiction. There is nothing in section 901.25 to suggest that fresh pursuit is somehow negated by virtue of the fact that the perpetrator and/or his vehicle are located for the first time outside the officers' jurisdiction. Just as the statute does not contain such restrictions, we can find no Florida cases to support these restrictions.
We note, as did Judge Taylor in Huebner, "that the east coast of south Florida has grown rapidly, and today can best be described as a megalopolis, with one small municipality abutting the next, each boasting its own police force and populated by hundreds of drivers routinely crossing municipal boundaries." This is not a new phenomenon and we must assume the legislature was cognizant of this spreading megalopolis when it amended section 901.25 in 1978 to its present form.
In an attempt to establish criteria for what constitutes fresh pursuit, we find persuasive the reasoning of the Colorado Supreme Court in Charnes v. Arnold, 198 Colo. 362, 600 P.2d 64 (1979), in which it discussed factors which it considers constitutes fresh pursuit:
Although fresh pursuit obviously includes high-speed Hollywood-style automobile chases, People v. Roddy, 188 Colo. 55, 532 P.2d 958 (1975), it also encompasses less dramatic police action. This court has never promulgated precise standards defining what police activity can be categorized as fresh pursuit; however, the plain language of *80 section 16-3-104(1)(c), C.R.S.1973[1], and pertinent cases from other jurisdictions indicate three criteria to be utilized in this analysis.
One crucial factor is the police must act without unnecessary delay. See Schindelar v. Michaud, 411 F.2d 80 (10th Cir.1969). This criterion is apparent from the statutory language itself. Another factor is that the pursuit must be continuous and uninterrupted, but there need not be continuous surveillance of the suspect or uninterrupted knowledge of his whereabouts. U.S. v. Oaxaca, 569 F.2d 518 (9th Cir.1978); People v. Clark, 46 Ill.App. 3d 240, 4 Ill.Dec. 785, 360 N.E.2d 1160 (1977); U.S. v. Getz, 381 F.Supp. 43 (E.D.Pa. 1974); and Reyes v. Slayton, 331 F.Supp. 325 (W.D.Va.1971).
A final consideration, implicit in the statute and in the cases cited Supra is the relationship in time between the commission of the offense, the commencement of the pursuit, and the apprehension of the suspect. The greater the length of time, the less likely that the circumstances under which the police acted were sufficiently exigent to justify an extra-jurisdictional arrest.
Id. at 660.
Thus, fresh pursuit encompasses: 1) that the police act without unnecessary delay; 2) that the pursuit be continuous and uninterrupted; and 3) that there be a close temporal relationship between the commission of the offense and the commencement of the pursuit and apprehension of the suspect. We adopt these criteria for establishing what constitutes fresh pursuit.[2] We believe these factors to be in keeping with the realities of our state with its elaborate intrastate and interstate expressway systems and its ubiquitous municipalities.
Although the trial court in the instant case classified the pursuit as a "fresh pursuit" as beginning once the Pompano Beach police officers saw the white Cadillac, there is no logical reason why the pursuit should not be deemed a "fresh pursuit" when the officers responded without unnecessary delay to the BOLO and, in continuous and uninterrupted fashion, sought and apprehended the occupants of the white Cadillac within a matter of minutes. This is not an instance where the robbery was committed in another jurisdiction and these officers took it upon themselves to make an arrest outside their jurisdiction; nor is this an instance where there was an extended time lapse between the commission of the robbery, the issuance of a BOLO and the apprehension of the perpetrators.
For the above stated reasons we hold that the trial court was correct in finding that the Pompano Beach police officers were engaged in a fresh pursuit when they made the arrest. Therefore, the trial court was correct in denying the motion to suppress. There are insufficient facts outlined in Greer to determine whether the suppression of the evidence would be affirmed under the criteria for fresh pursuit that we enunciate in the instant case. The facts outlined in Greer do not reflect whether the pursuit was "continuous and uninterrupted." Rather, they only show that a BOLO was issued and ten minutes later the defendant was apprehended at a car wash located outside the officer's jurisdiction. However, to the extent our opinion in the instant case conflicts with Greer, we hereby recede from it.
Porter argues the Prison Releasee Reoffender Act (PRRA) is unconstitutional on several grounds. This argument is without merit as the Florida Supreme Court has recently held that the PRRA is constitutional. See State v. Cotton, 25 Fla. L. *81 Weekly S463, ___ So.2d ___, 2000 WL 766521 (Fla. June 15, 2000). Thus, we affirm the sentence imposed on Porter pursuant to the PRRA.
AFFIRMED.
DELL, GUNTHER, STONE, POLEN, STEVENSON, SHAHOOD, GROSS and TAYLOR, JJ., concur.
WARNER, C.J., concurs specially with opinion, in which FARMER and KLEIN, JJ., concur.
WARNER, C.J., concurring specially.
I concur in the result because the facts of this case come within the common law definition of "fresh pursuit." I think, however, there is more to the common law definition than is included in the majority opinion. A short synthesis of the doctrine is contained in 5 Am.Jur.2d Arrest § 72 (1995):
The fresh pursuit doctrine requires that the officer begin the chase in his or her own jurisdiction and continue it until the suspect is caught. If the crime is committed outside the jurisdiction of the arresting officer, then the doctrine does not apply....
A fresh pursuit must be continuous and uninterrupted, but continuous surveillance of the suspect or uninterrupted knowledge of the suspect's whereabouts is not necessary.
The critical elements characterizing fresh pursuit are its continuity and its immediacy rather than merely the rate of speed at which the pursuit is made.... [A]lthough the pursuit does not imply a fender-smashing Hollywood-style chase scene, it does connote something more than mere casual following.
(Footnotes omitted). In addition to the foregoing explanation, courts have required that the individual sought must be attempting to escape to avoid arrest or at least know that he is being pursued. See City of Wenatchee v. Durham, 43 Wash. App. 547, 718 P.2d 819, 822 (1986); State v. Ferrell, 218 Neb. 463, 356 N.W.2d 868, 870 (1984).
The first prerequisite of "fresh pursuit" is that there be pursuit. That is defined in Black's Law Dictionary 1250 (7th ed.1999), as "[t]he act of chasing to overtake or apprehend." See also City of Ash Grove v. Christian, 949 S.W.2d 259, 264 (Mo.Ct.App.1997). This does not require in-sight chasing, but it is more than an investigatory search. In construing an identical fresh pursuit statute, the court in Swain v. State, 50 Md.App. 29, 435 A.2d 805, 809 (1981), stated that "[t]he statute obviously encompasses a bumper-to-bumper high speed chase across the District [of Columbia] line and just as obviously does not encompass looking for a Baltimore City robbery suspect in the District [of Columbia] on a mere hunch."
In order to arrest outside of the officer's jurisdiction, if the suspect is not sighted in the jurisdiction, there should be some information provided to the officers of the direction taken by the fleeing felon or other evidence to suggest where the suspect is headed. For instance, in Swain the BOLO reported the direction the murder suspect was traveling, and the officers pursued in that direction. As one of them returned towards Baltimore from the D.C. neighborhood, the suspect was spotted. Similarly, in State v. Green, 257 Kan. 444, 901 P.2d 1350 (1995), the officers received a report from the victims of the robbery describing the getaway vehicle and the direction of travel. See also Duenez v. State, 735 S.W.2d 563 (Tex.App.1996, pet. ref'd); Commonwealth v. Magwood, 503 Pa. 169, 469 A.2d 115 (1983). Information such as direction of travel would separate an actual pursuit from a meandering investigation.
That is what distinguishes this case from State v. Greer, 761 So.2d 343 (Fla. 4th DCA 1999), where there was no indication of direction or any evidence offered to indicate that the suspect had fled outside the jurisdiction of the arresting officer. In granting the motion to suppress in Greer, *82 the trial court could very well have concluded that there was no pursuit of a suspect within the common law meaning of the term and that the officers were acting on a mere "hunch" in locating the vehicle. Thus, I see no need to recede from Greer, because the facts of that case differ from the instant case. Here the officers were immediately alerted to the description and direction of travel by the perpetrators, which was continued by the report from the off-duty police officer. Based upon the common law, there is no question that the fresh pursuit statute permitted the officers to continue their pursuit and arrest the defendant.
FARMER and KLEIN, JJ., concur.
NOTES
[1] "Fresh pursuit" means the pursuit without unnecessary delay of a person who has committed a crime, or who is reasonably believed to have committed a crime.
[2] We do not find that the underlying facts in Charnes or the Colorado fresh pursuit statute controlling factors in adopting this criteria.