DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

————————————————

STATE OF FLORIDA,

Appellant,

v.

MITCHELL WILLIAMS REDDIN,

Appellee.

No. 2D22-3853

————————————————

December 15, 2023

Appeal from the County Court for Pasco County; Debra Roberts, Judge.

Ashley Moody, Attorney General, Tallahassee, and Samuel R. Mandelbaum, Assistant Attorney General, Tampa, for Appellant.

Howard L. Dimmig, II, Public Defender, and Tosha Cohen, Assistant Public Defender, Bartow, for Appellee.

LABRIT, Judge.

The State appeals an order dismissing its case against Mitchell Williams Reddin. The trial court dismissed the case midtrial after concluding that the New Port Richey officer who arrested Mr. Reddin lacked authority to stop and arrest Mr. Reddin outside of his territorial jurisdiction. Because the officer was in fresh pursuit of Mr. Reddin and was therefore authorized to make an extraterritorial arrest, we reverse the dismissal and remand for a new trial.

The State charged Mr. Reddin with reckless driving under section 316.192(1), Florida Statutes (2021), and resisting an officer without violence under section 843.02, Florida Statutes (2021). The State alleged that Mr. Reddin recklessly operated his motorcycle on U.S. Highway 19 in Pasco County and disobeyed commands from law enforcement. The State's complaint filed in November 2021 identified the New Port Richey Police Department as the arresting agency and Port Richey as the location of the arrest.

The case went to trial the following year and the State called the arresting officer as its first witness. The officer testified that while on patrol in New Port Richey, he observed a motorcycle speed by him on U.S. Highway 19. The officer followed the motorcycle north and saw it heavily accelerate, weave around and between cars, and drive over 100 miles per hour—more than twice the speed limit. The officer said that he never lost sight of the motorcycle and that it eventually slowed, which allowed the officer to catch up without jeopardizing the safety of other motorists. After the motorcycle and the officer crossed municipal lines into Port Richey, the officer activated his lights and sirens and pulled the motorcyclist over on the side of U.S. Highway 19.

During the defense's cross-examination and the State's redirect of the officer, the officer testified that he had authority to stop the motorcyclist in Port Richey because he was also a deputy with the Pasco County Sheriff's Office (PCSO). The defense didn't challenge the officer's authority, either before or during trial. But the trial court interrupted the State's redirect of the officer to ask whether he had any documentation to support his testimony regarding his authority to make an arrest outside of New Port Richey. The officer said that he did but

that it was in his vehicle. The trial court made the parties take a break so the officer could get his documents, and it told the parties they would need to recall the officer "because he's going to have to testify about this jurisdiction with the Pasco County Sheriff's Office." The trial court then sent the jury out of the room and—without any prompting from the defense—told the State: "I need for you to show me that [the officer] has unbridled discretion as a Pasco County Sheriff's deputy to handle any kind of cases" in Port Richey.

The State was unprepared for this challenge because the defense never raised it. The State responded on the fly and provided the trial court with the officer's PCSO credentials and a mutual aid agreement between New Port Richey and Port Richey. The State also reminded the trial court that the reckless driving charge began in New Port Richey and that an officer in fresh pursuit has authority to make an arrest in another jurisdiction.

The trial court was unconvinced. It found that the officer was not in fresh pursuit, so in its view the issue of the officer's authority turned on the mutual aid agreement. And because the State did not have a witness from the Port Richey Police Department available to testify at trial that day, the trial court found that the State could not prove that the New Port Richey officer complied with the mutual aid agreement when he stopped Mr. Reddin. The trial court then dismissed the State's case sua sponte, before the State rested its case-in-chief. The State timely appealed.

Mr. Reddin moves to dismiss this appeal, contending that it is unauthorized and double jeopardy precludes it. We first address these arguments and conclude that the State's appeal is properly before us. We then address the trial court's error in dismissing the case.

3

## II.

According to Mr. Reddin, the order dismissing the case constitutes a judgment of acquittal that the State cannot appeal. He correctly argues that the State can only appeal a judgment of acquittal if it follows a guilty verdict. *See* § 924.07(1)(j), Fla. Stat. (2022); Fla. R. App. P. 9.140(c)(1)(E); *see also United States v. Scott*, 437 U.S. 82, 91 (1978) ("A judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal."). This limitation on the State's right to appeal was crafted with double jeopardy in mind, and it protects a defendant's right against being tried twice for the same offense. *See State v. Lundy*, 233 So. 3d 1252, 1253 (Fla. 3d DCA 2017); *State v. Stone*, 42 So. 3d 279, 281 (Fla. 4th DCA 2010); *cf. Hudson v. State*, 711 So. 2d 244, 246 (Fla. 1st DCA 1998) (explaining why the appeal of an acquittal after a guilty verdict does not violate double jeopardy).

But a retrial in this case would not offend double jeopardy because the trial court dismissed the case "on grounds unrelated to guilt or innocence." *See Scott*, 437 U.S. at 96. Our supreme court instructs that "a trial court's actions constitute an acquittal for double jeopardy purposes when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' " *State v. Gaines*, 770 So. 2d 1221, 1226 (Fla. 2000) (alteration in original) (quoting *Scott*, 437 U.S. at 97). On the other hand, where "the trial judge terminates the proceedings favorably to the defendant on a basis not related to factual guilt or innocence," it's not an acquittal and double jeopardy does not preclude appellate review. *See Scott*, 437 U.S. at 92, 98–99.

4

The latter situation presents itself here because the trial court terminated the case on an issue unrelated to Mr. Reddin's guilt or innocence. It dismissed the case because it believed that the arresting officer did not have authority to conduct a traffic stop in Port Richey. This finding focuses solely on the officer, his credentials, and authority and not on Mr. Reddin's actions or the charges against him.

Mr. Reddin nonetheless points to language in the trial court's order that "adjudge[d]" Mr. Reddin not guilty, in addition to "dismiss[ing]" the case. Mr. Reddin submits that this adjudication equates to an acquittal. However, " 'the trial judge's characterization of his [or her] own action cannot control the classification of the action' for purposes of double jeopardy." *Gaines*, 770 So. 2d at 1226 (alteration in original) (quoting *Scott*, 437 U.S. at 96).

Further, while the trial court's characterization is not dispositive, its reasoning here is telling. In discussing its decision to sua sponte dismiss the case, the trial court had the following exchange with the State:

> THE COURT: I'm just going to make a decision about jurisdiction because jurisdiction is going to control this case, although I think there are some other issues that also may control this case if we pass jurisdiction and just talked about the elements of the offense, but I'm just sticking right now just to the jurisdiction of [the New Port Richey officer] to be able to stop this defendant in Port Richey and not comply with the requirements of this [mutual aid] agreement. That's where we are right now, State, and so unless you can tell me something else to change my mind, I'm going to be dismissing this case for lack of jurisdiction. So --
>
> THE STATE: Your Honor, the facts of the reckless driving did take place in New Port Richey --
>
> THE COURT: What we've got to do, we've got to have jurisdiction before we can get to the facts of the case.

5

The trial court similarly told the jurors the following after it dismissed the State's case:

> THE COURT: This case . . . did not turn on -- on the facts of the case. This was a legal issue that came up, and I make all the legal decisions in the case. This officer was a New Port Richey police officer. He didn't even try to stop this person until he was in a different city, Port Richey. He's not a Port Richey police officer.

The trial court correctly viewed the issue of the officer's authority as distinct from the facts of the case relating to Mr. Reddin's guilt or innocence. What's more, the very basis for the trial court's dismissal—the mutual aid agreement—was not a fact in evidence but a document the trial court had the State produce during a break. "This is scarcely a picture of an all-powerful [S]tate relentlessly pursuing a defendant who had either been found not guilty or who had at least insisted on having the issue of guilt submitted to the first trier of fact." *Scott*, 437 U.S. at 96. The State was willing and able to continue trial, but the trial court, with support from the defense, abruptly ended it.

Because the trial court terminated the proceedings without any consideration of Mr. Reddin's guilt or innocence, "[n]o interest protected by the Double Jeopardy Clause is invaded," *id.* at 100, and the State's appeal of the dismissal is authorized, *see* § 924.07(1)(a); Fla. R. App. P. 9.140(c)(1)(A), *see also State v. Young*, 936 So. 2d 725, 728 (Fla. 1st DCA 2006) ("Because the purported 'JOA' entered by the trial court is actually a dismissal based on the alleged insufficiency of the information, not a decision on the merits, the State is allowed to appeal the dismissal . . . , and double jeopardy does not bar further proceedings."); *State v. James*, 626 So. 2d 259, 262 (Fla. 5th DCA 1993) ("The trial court's [midtrial] dismissal . . . was unrelated 'to factual guilt or innocence,' *Scott*, and

6

thus did not constitute an acquittal barring an appeal.").  For these reasons, we deny Mr. Reddin's motion to dismiss this appeal.

### III.

Turning to the merits, the trial court concluded that the arresting officer from New Port Richey lacked authority to conduct a traffic stop in Port Richey.  It also believed that the mutual aid agreement between the two municipalities was the deciding factor.  But we needn't delve into the terms of the agreement or what proof of compliance the State offered because the officer was in fresh pursuit of Mr. Reddin when the officer stopped him in Port Richey.[1]

Section 901.25(2), Florida Statutes (2021), provides that "[a]ny duly authorized state, county, or municipal arresting officer is authorized to arrest a person outside the officer's jurisdiction when in fresh pursuit." This statute expands on the common law rule that "an officer may pursue a felon or a suspected felon, with or without a warrant, into another jurisdiction and arrest him there."  *Porter v. State*, 765 So. 2d 76, 78 (Fla. 4th DCA 2000).  And the statute plainly defines "fresh pursuit" to include "the pursuit of a person who has violated a county or municipal ordinance or chapter 316 or has committed a misdemeanor." § 901.25(1).

The trial court found that the officer was not in fresh pursuit because he testified that he "did not pursue [Mr. Reddin]."  The officer explained: "[Mr. Reddin] was not fleeing from me, so therefore I wasn't

---

[1] The State raises other arguments for reversal, but Mr. Reddin contends that some of the State's arguments are unpreserved and that "[t]he State should be limited to the arguments made below."  We agree with Mr. Reddin, *see State v. Fernandez*, 335 So. 3d 784, 786 (Fla. 2d DCA 2022), and limit our review accordingly.

pursuing him. . . . The definition if I look at the pursuit is if I were to charge him with fleeing to elude. We did not." The officer did not offer this testimony in the context of a fresh pursuit discussion, but the trial court found it determinative of the issue. Mr. Reddin urges us to affirm this finding, arguing that the trial court simply held the officer to his word. But the officer's testimony does not impact the statutory definition of "fresh pursuit," which was for the court—not the officer—to interpret and apply. *See Mathews v. Branch Banking & Tr. Co.*, 139 So. 3d 498, 500 (Fla. 2d DCA 2014) ("The interpretation of a statute is a question of law . . . ." (citing *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 8 (Fla. 2012))).

Here, the record establishes that the officer pursued Mr. Reddin for suspicion of reckless driving, which is both a violation of chapter 316 and a misdemeanor. The pursuit began in the officer's municipality and carried over to a neighboring municipality because of the speed at which Mr. Reddin was allegedly driving. Under these circumstances, section 901.25(2) authorized the officer "to arrest [Mr. Reddin] outside the officer's jurisdiction," regardless of the mutual aid agreement or the officer's PCSO credentials. *See State v. Potter*, 438 So. 2d 1085, 1086–87 (Fla. 2d DCA 1983) (holding that an officer who stopped a vehicle beyond his city limits, where the officer first observed the vehicle within his city limits weaving and crossing the center line in violation of chapter 316, was authorized "to arrest on fresh pursuit across jurisdictional lines"); *State v. Joy*, 637 So. 2d 946, 947–48 (Fla. 3d DCA 1994) (concluding that an officer who observed a truck speed by him, and who left his jurisdiction while following the truck at an unusually high rate of speed, was "engaged in fresh pursuit of a suspected speeder" and was authorized to make the stop under section 901.25).

Thus, the trial court erred in dismissing the State's case based on the officer's purported lack of authority.[2]

## IV.

Because the trial court erred in finding that the arresting officer lacked authority to stop Mr. Reddin, we reverse the order dismissing the State's case. We also conclude that retrying Mr. Reddin would not

---

[2] We also caution trial courts against the actions that led to dismissal of this case. Although courts are duty-bound to investigate potential defects in their subject matter jurisdiction, *see Polk County. v. Sofka*, 702 So. 2d 1243, 1245 (Fla. 1997), this duty does not extend to other legal issues such as the officer's territorial jurisdiction and his authority to stop Mr. Reddin in this case. As we have explained, "[a] judge must not independently investigate facts in a case and must consider only the evidence presented." *DiGiovanni v. Deutsche Bank Nat'l Tr. Co.*, 226 So. 3d 984, 988 (Fla. 2d DCA 2017) (quoting Fla. Code of Jud. Conduct, Canon 3B(7), cmt.). Likewise, a "court is not authorized to become a party's advocate and raise a legal issue sua sponte." *Bank of N.Y. Mellon v. Barber*, 295 So. 3d 1223, 1225 (Fla. 1st DCA 2020). And "[e]very litigant, including the State in criminal cases, is entitled to nothing less than the cold neutrality of an impartial judge." *Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1983) (quoting *State ex rel. Mickle v. Rowe*, 131 So. 331, 332 (Fla. 1930)).

In light of these guiding principles, we have serious concerns with the events that unfolded below. The record shows that the trial court independently raised the issue of the officer's authority, required the State to produce documents the defense didn't request, then dismissed the State's case sua sponte based on that issue and those documents. These actions create the appearance of partiality and cast a shadow upon judicial neutrality. *See DiGiovanni*, 226 So. 3d at 988. We therefore emphasize our supreme court's words from nearly a century ago that "[i]t is the duty of courts to scrupulously guard th[e] right of the litigant" to a neutral and impartial judiciary and that anything less than cold neutrality "tends to discredit and place the judiciary in a compromising attitude which is bad for the administration of justice." *State ex rel. Mickle*, 131 So. at 332.

9

violate his right against double jeopardy, as the trial court dismissed the case on grounds unrelated to factual guilt or innocence.

Reversed and remanded.

NORTHCUTT and KHOUZAM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.